# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-3909

DENADA M. BACE,

*Petitioner*,

v.

JOHN ASHCROFT, UNITED STATES ATTORNEY GENERAL,

*Respondent.*

———————

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A76-140-481

———————

ARGUED SEPTEMBER 25, 2003—DECIDED DECEMBER 18, 2003

———————

Before CUDAHY, RIPPLE, and KANNE, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Denada M. Bace petitions
for review of the Board of Immigration Appeals' (BIA's)
rejection of her and her husband's application for asylum,
withholding of removal and relief under the Convention
Against Torture Act. We find that the BIA's decision to deny
asylum was not supported by substantial evidence. We
therefore vacate the BIA's order and remand for further
proceedings.

## I.  BACKGROUND

Petitioner Denada Bace and her husband, Erion Bace, natives and citizens of Albania, entered the United States on January 16, 1999, using fake Italian passports. AR 407.[1] Upon arriving in the United States, Mr. Bace indicated that he came seeking asylum for political reasons. AR 407, 409. On February 11, 1999, the Immigration and Naturalization Service (INS) initiated removal proceedings, charging them under the Immigration and Nationality Act (INA) § 212(a)(6)(C)(i) (fraud or willful misrepresentation) and § 212(a)(7)(A)(i)(I) (not in possession of a valid unexpired immigration visa or other valid entry document). The Baces requested asylum under INA § 208, 8 U.S.C. § 1158, withholding of deportation under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3) and withholding of removal under the United Nations Convention Against Torture, 8 C.F.R. § 208.16(c)(3).

In 1995, Mr. Bace joined the Albanian Democratic Party. AR 350. In a national election, the Democratic Party's chairman, Sali Berisha, won the presidency and retained this position until 1997. In early 1997, the collapse of massive pyramid schemes and the resulting loss of many Albanians' life savings led to five months of chaos, violence and near anarchy. AR 425. An agreement of all the major political parties to hold early elections and the formation of a government of national reconciliation, as well as the creation of a multinational protection force, brought about sufficient public order to conduct elections. *Id.* In the national election, a new government led by the Socialist Party's Fatos Nano was installed. AR 426. Albania's

---

[1] The administrative record in this case will be designated as "AR." The appendix to the Petitioners' brief will be referred to as "App.".

Parliament, then dominated by the Socialist Party, proposed a new constitution, and a national constitutional referendum was conducted on November 22, 1998. AR 319, 366-67.

Mr. Bace was appointed by the Democratic Party to serve on a commission to supervise and certify the referendum. AR 319, 350. In this capacity, he observed incidents of multiple voting, voting by persons not registered and voter intimidation. AR 319, 351. While at the voting site, he complained to other members of the commission of the open fraud, but the Socialist Party representatives dismissed his complaints. AR 352, 380-82. Thus, Mr. Bace and the deputy chairman of the commission, who was also a representative of the Democratic Party, left the site without certifying the vote. AR 353, 382. Shortly after leaving, Mr. Bace was accosted by eight masked men in two cars. AR 438. They identified him as "the one who did not sign the report" and "the one who wants justice." AR 353-54, 382, 438. They then proceeded to beat Mr. Bace and cut him with a razor. AR 353-54.

Believing that those who attacked him were being protected by the state, Mr. Bace concluded that reporting the incident to the police would be futile and instead he wrote a complaint to the head of the Democratic Party. AR 354-55. However, on December 1, 1998, Mr. Bace was again beaten by a group of four masked persons on the streets of Tirana. The men said, "look at who's coming, the new politician, the hope of the country . . . and be careful not to beat him very hard, because . . . he might even become the president of Albania." AR 356, 438. After this second attack, Mr. Bace wrote a letter to another Democratic Party official, a former Chairman in the Albanian Parliament, again complaining of the situation and listing the names of people whom he thought were generally involved in government corruption. AR 357-58.

Two days later, on December 3, 1998, Mr. Bace was again beaten by masked persons who told him that he would "suffer the consequences" of mentioning names and becoming "too involved with the private lives of people." AR 359, 438. After this third beating, Mr. Bace wrote to the Democratic Party's new leader to complain. AR 360.

At about midnight on January 5, 1999, a number of masked and armed men dressed in black came to Mr. and Mrs. Bace's home where they lived with Mr. Bace's parents. AR 361. The intruders claimed that they "were representing the state" and sought to search for illegal weapons. Mr. Bace asked to see a search warrant but the men forced their way inside and one hit Mr. Bace in the stomach with the butt of a rifle. AR 395. Mr. Bace's father went to his aid but was struck down with a blow to the head. When Mr. Bace went to help his father, the masked men beat him. AR 396. At that point, two of the intruders set upon Mrs. Bace and raped her in front of her husband and her in-laws. AR 361-62, 396. During the rape, one of the men said to Mr. Bace, "you look for justice and we'll show you what justice is . . . ." AR 396. Shortly after this last attack on Mr. Bace and his family, Mr. and Mrs. Bace acquired fake Italian passports, traveled to the United States and requested asylum. AR 378, 404-17, 440-46.

One month later, the INS initiated removal proceedings against the Baces. After hearing testimony from both Mr. and Mrs. Bace, the Immigration Judge (IJ) denied their requests for relief from removal and ordered them removed to Albania. AR 316-27. The IJ made only three relevant findings:

> (1) The evidence does not lead to the conclusion that any of the alleged attacks were politically motivated on account of any of the letters which the male respondent sent to various Democratic Party officials after each incident, or to support his belief of complicity between

the Democratic Party and the Socialist Party. Furthermore, the identities of the various alleged attackers has not been established so as to conclude that the respondents have an objectively reasonable fear of persecution from either political party.

(2) All of the alleged incidents occurred within a one-and-a-half month time frame in Tirana. The respondents have thus not addressed the issue of internal relocation elsewhere. (Citations omitted).

(3) The respondents have submitted no supporting documentation concerning present-day Albania's political landscape so as to support any of their generalized assertions concerning country conditions.

AR 324-35. The IJ's opinion also seems to rely heavily on a State Department report which indicated, in part, that in Albania "[t]he settling of accounts persist (sic), but individuals are *rarely* targeted for mistreatment on political grounds." App. at 8 (emphasis added). The BIA affirmed without opinion in an order dated October 4, 2002.[2] On November 4, 2002, the Baces' attorney filed a petition for review of the decisions below, which omitted Mr. Bace from the petition. According to the Baces, this was an inadvertent omission. On March 19, 2003, the Baces, through a newly retained attorney, filed motions to reopen with the BIA, attaching more recent evidence of persecution against the Bace family and documentation of country conditions. AR 7-275. On March 28, 2003, the BIA denied the motions to reopen as untimely filed. AR 1-4. As the Baces do not appeal the denial of the motions to reopen, we have not considered this new evidence.

---

[2] Because the BIA's affirmance was issued without opinion, the proper object of our review is the IJ's decision. *See* 8 C.F.R. § 1003.1(a)(7); *see also Kharkhan v. Ashcroft*, 336 F.3d 601, 604 (7th Cir. 2003).

## II.  DISCUSSION

### A)  Proper Parties

As a preliminary matter, we must decide who are the proper parties to this appeal. Due to what according to the petitioners was an inadvertent error on the part of their former counsel, Mr. Bace's name was left off their timely filed petition. Although the INS concedes that Mr. and Mrs. Bace are similarly situated, it argues that Mr. Bace has waived his right to appeal. *See* Brief of Respondent at 2 n.2. Even if Mr. Bace were not a proper party to this appeal, however, the ultimate outcome would be the same because under 8 U.S.C.A. § 1158(b)(3)(A), "[a] spouse or child . . . of an alien who is granted asylum under this subsection may, if not otherwise eligible for asylum under this section, be granted the same status as the alien if accompanying, or following to join, such alien." *See Tsevegmid v. Ashcroft*, 336 F.3d 1231, 1233 n.2 (10th Cir. 2003) (finding that "[t]he wife and son's asylum request was encompassed within Mr. Tsevegmid's application"). Therefore we decline to take a formalistic view of the petition in this case, and we find that Mr. Bace's appeal is encompassed within his wife's. *See, e.g.*, Fed. R. App. P. 3(c)(4) ("[a]n appeal must not be dismissed for . . . failure to name a party whose intent to appeal is otherwise clear from the notice.").

### B)  Asylum

This court has jurisdiction to review the order of the BIA to deny asylum under 8 U.S.C. § 1252(a)(1). We review the BIA's factual determinations under the highly deferential substantial evidence standard. *See Tamas-Mercea v. Reno*, 222 F.3d 417, 422 (7th Cir. 2000); *Petrovic v. INS*, 198 F.3d 1034, 1037 (7th Cir. 2000). We may not reverse the BIA's determination simply because we believe it was wrongly

decided, but rather we must be compelled by the evidence to reach that conclusion. *Tamas-Mercea*, 222 F.3d at 422; *Bradvica v. INS*, 128 F.3d 1009, 1012 (7th Cir. 1997); *Anton v. INS*, 50 F.3d 469, 472 (7th Cir. 1995).

### 1) Past Persecution

To qualify for asylum, the Baces must show that they are refugees within the meaning of the INA by proving that they were persecuted in the past on account of race, religion, nationality, membership in a social group or political opinion, or alternatively, by proving that they have a well-founded fear of future persecution on account of the same reasons. *See* 8 U.S.C. § 1158(b)(1); 8 U.S.C. § 1101(a)(42)(A); *Ambati v. Reno*, 233 F.3d 1054, 1059-60 (7th Cir. 2000). The issue of past persecution is particularly critical here because of the presumption of a well-founded fear of future persecution that applies if we find past persecution. *Dandan v. Ashcroft*, 339 F.3d 567, 573 (7th Cir. 2003). A finding of past persecution actually shifts to the government the burden of rebutting the presumptive fear of future persecution. *See id.*; 8 C.F.R. § 208.13(b)(1).

This Circuit has defined persecution as "punishment or the infliction of harm for political, religious, or other reasons that this country does not recognize as legitimate." *Tamas-Mercea*, 222 F.3d at 424 (quoting *Mitev v. INS*, 67 F.3d 1325, 1330 (7th Cir. 1995)); *see also Ambati*, 233 F.3d at 1060. "Although the term 'persecution' includes actions less severe than threats to life or freedom, 'actions must rise above the level of mere harassment to constitute persecution.'" *Ambati*, 233 F.3d at 1060 (citation omitted).

The Baces present a compelling case of past persecution. After Mr. Bace witnessed serious voting improprieties and refused to certify the vote, he was the subject of repeated beatings over the course of a month. These incidents only ended when the Baces fled the country. In each incident, Mr. Bace was attacked by multiple assailants and in at

least one incident he was attacked and cut with a razor. During each assault, the assailants made statements suggesting that the attack was politically motivated. It was the last straw when a group of men broke into the Baces' home, beat Mr. Bace and his father and raped Mrs. Bace in front of her husband, her father-in-law and her mother-in-law. During the rape, the men said to Mr. Bace, "you look for justice and we'll show you what justice is." AR 396.

The IJ's cursory opinion did not make a specific credibility ruling nor a specific finding on past persecution. *Zhao v. U.S. Dept. of Justice*, 265 F.3d 83, 97 (2d Cir. 2001) ("Failure to explain a decision adequately presents a ground for reversal."). The IJ did note that:

> The evidence does not lead to the conclusion that any of the alleged attacks were politically motivated on account of any of the letters which the male respondent sent to various Democratic Party officials after each incident, or to support his belief of complicity between the Democratic Party and the Socialist Party. Furthermore, the identity of the various attackers has not been established so as to conclude that the respondents have an objectively reasonable fear of persecution from either political party.

App. at 10-11. Whether any of the attacks were politically motivated on account of Mr. Bace's letters, however, is not central to a finding of politically motivated past persecution. The IJ ignored clear evidence in the record that the attacks were motivated by Mr. Bace's membership in the Democratic Party and his refusal to certify the vote. The attacks began occurring only after Mr. Bace refused to certify the vote, and during every attack, the assailants made statements suggesting the attacks were politically motivated.

Mr. Bace's inability to identify his attackers in this case is not critical to a determination of past persecution. There

is no rule requiring that persecution actually be directed by the state or by an organized political party. *See* 8 C.F.R. § 208.13(b)(3)[3]; *Roman v. INS*, 233 F.3d 1027, 1034 (7th Cir. 2000) (noting that an applicant must only show that the government condoned persecution or demonstrated an inability to protect victims); *Chitay-Pirir v. INS*, 169 F.3d 1079 (7th Cir. 1999) (finding that terror committed by a four-member local "civil defense patrol" could be the basis of past persecution); *Andriasian v. INS*, 180 F.3d 1033, 1042-43 (9th Cir. 1999) (finding that threats by "thugs" could be the basis of past persecution where the government could not or would not control the threat); *Sangha v. INS*, 103 F.3d 1482, 1487 (9th Cir. 1997) (finding a possibility of past persecution where petitioner was threatened by a "terrorist group the government is unable to control"). Even if it were a requirement that persecution actually be directed by the state, the proximity of the attacks to the time Mr. Bace failed to certify the vote, as well as the comments made by his attackers, suggest that the attacks were likely directed by members of the Socialist Party.

---

[3] The text of the statute, itself, implies that persecution need not be sponsored or directed by the government:

> (i) In cases in which the applicant has not established past persecution, the applicant shall bear the burden of establishing that it would not be reasonable for him or her to relocate, *unless the persecution is by a government or is government-sponsored.*

> (ii) *In cases in which the persecutor is a government or is government-sponsored*, or the applicant has established persecution in the past, it shall be presumed that internal relocation would not be reasonable, unless the Service establishes by a preponderance of the evidence that, under all the circumstances, it would be reasonable for the applicant to relocate.

8 C.F.R. § 208.13(b)(3) (emphasis added).

Regardless, the attackers clearly had a political motivation. We believe the Baces have presented ample evidence of past persecution on account of political opinion.

While every asylum case involves unique facts, this case bears some resemblance to *Chouchkov v. INS*, 220 F.3d 1077 (9th Cir. 2000). In *Chouchkov*, the petitioner was a Russian nuclear engineer who objected to a government-approved deal to sell nuclear technology to Iran. *Id.* at 1080. As a result, he received threatening phone calls, his car was rear-ended, stolen and his father was injured in a hit-and-run. *Id.* at 1081. After each of these incidents, the petitioner received phone calls linking the event to his objection. The Ninth Circuit reversed the BIA's adverse finding with respect to past persecution, finding that its decision was not supported by substantial evidence. *Id.* at 1084. We believe that the Baces' case of past persecution is at least as strong, if not stronger, than the petitioner's claim in *Chouchkov*.

At oral argument, the government argued that the IJ properly denied asylum because the Baces' evidence of past persecution was "contradicted" by the State Department report on Albania. If the IJ did make such a finding, it was not mentioned in his written opinion. We hope, however, that this was not the basis of the IJ's decision because it would be improper to find that a witness's testimony about specific events could be "contradicted" by a generalized State Department report broadly discussing conditions in the applicant's country of origin.

> It is unrealistic to expect that country condition reports could contain references to all citizens of that country who have faced, or might face, persecution on one of the specified grounds. While country reports may, in rare instances involving prominent dissidents, contain direct corroboration of a petitioner's account, to demand that they do so and otherwise eschew any analysis of the evidence is clearly erroneous.

*El Moraghy v. Ashcroft*, 331 F.3d 195, 204 (1st Cir. 2003); *see also Galina v. INS*, 213 F.3d 955, 959 (7th Cir. 2000) ("[T]he [State Department] reports are brief and general, and may fail to identify specific, perhaps local, dangers to particular, perhaps obscure, individuals."); *Ladha v. INS*, 215 F.3d 889, 899 (9th Cir. 2000). Moreover, the State Department report, to which the government referred, actually tended to support a finding of past persecution, concluding that in 1998, "Democratic Party members were indeed the victims of numerous attacks and murders, but in Albania's general atmosphere of lawlessness and lax law enforcement, neither culprits nor motives were ever found or confirmed for most of these crimes." *See* AR at 422.

For these reasons, although the BIA failed to make an express finding with respect to past persecution, any determination that the Baces were not the victims of past persecution on account of Mr. Bace's political opinion is not supported by substantial evidence. Any reasonable finder of fact would be compelled to conclude that the Baces were the victims of persecution such that their lives or freedom were threatened on account of Mr. Bace's political opinion.

### 2)   Well-Founded Fear of Future Persecution

Because the Baces properly established past persecution, the IJ should have shifted to the INS the burden of rebutting the presumptive fear of future persecution. *See Dandan*, 339 F.3d at 573; 8 C.F.R. § 208.13(b)(1). The IJ's opinion contains nothing explicit on the burden of making a showing of fear of future persecution, but the implication is that it remained with the petitioners. App. at 11 (finding that the "respondents have thus not addressed the issue of internal relocation elsewhere" and "have submitted no supporting documentation concerning present-day Albania's political landscape. . . .")

Reading the IJ's opinion in the light most favorable to the respondent, we note that it found that the following three factors suggested that the Baces did not have a well-founded fear of future persecution: (1) they did not know the identities of their attackers; (2) they did not address the issue of internal relocation outside of Tirana; and (3) they submitted no evidence concerning present-day Albania's political landscape.

With respect to the identities of their attackers, the fact that the Baces do not know specifically who attacked them does not in itself make future persecution any more or less likely. It is true that if this information were known, it might be easier to determine the likelihood of attacks being repeated in the future. But the difficulty engendered by the absence of this information falls upon the party who bears the burden of showing the likelihood of future persecution, which, as we have noted, has become the government. Not surprisingly, the government has also failed to produce any evidence regarding the identities of the Baces' attackers. Thus, the fact that their attackers have not been identified should not be weighed against the Baces in determining whether they have a well-founded fear of future persecution.

Similarly, with respect to internal relocation, it was the government's burden to show that it was reasonable to expect the Baces to move elsewhere in Albania. *See* 8 C.F.R. § 208.13(b)(2)(ii); *Melkonian v. Ashcroft*, 320 F.3d 1061, 1070 (9th Cir. 2003) ("[T]he burden is on the INS to demonstrate by a preponderance of the evidence . . . that the applicant can *reasonably* relocate internally to an area of safety.") (emphasis added). In order to determine the reasonableness of internal relocation, the IJ was required to consider "whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social

and cultural constraints, such as age, gender, health, and social and familial ties." 8 C.F.R. § 208.13(b)(3). The State Department report which refers to "a glut of firearms, extreme poverty . . . and extrajudicial killings . . . throughout the country" does not, in itself, establish that relocation would be reasonable in this case. AR 422. Moreover, the mere fact that all of the alleged incidents occurred within a one-and-a-half month time frame in Tirana does not establish that relocation would be reasonable.

Finally, we turn to Albania's present-day political landscape. As we noted earlier, it appears that the IJ improperly placed the burden on the Baces to show that the dangerous conditions of former Albania persist. Further, it appears that the IJ misconstrued the need for corroborative evidence, finding that "[a]s the basis for an asylum claim becomes less focused on specific events involving the alien personally . . . corroborative evidence . . . may become essential." App. at 11 n.1. The present claim, however, is not directed at broad allegations regarding general conditions in the aliens' country of origin. *See Matter of Dass*, 20 I&N Dec. 120 (BIA 1989). To the contrary, this asylum claim is based almost entirely on specific events personally involving the Baces. Thus, the need for corroborative evidence—particularly of a general nature—was not pressing.

As we read the IJ's opinion, it appears that the entire finding that the Baces failed to show a well-founded fear of future persecution rests on a portion of the 1998 State Department profile, which states, in part, that "[t]he settling of accounts persist (sic), but individuals are *rarely* targeted for mistreatment on political grounds." App. at 5 (emphasis added). As we noted earlier, however, this same State Department report indicates that "Democratic Party members were indeed [in 1998] the victims of numerous attacks and murders, but in Albania's general atmosphere of lawlessness and lax law enforcement, neither culprits nor motives were ever found or confirmed for most of these

crimes." AR at 422. Ultimately, we think this particular State Department report to be an inadequate basis for denial of asylum given the egregious facts of this petition. *See, e.g.*, *Galina*, 213 F.3d at 958 (finding that the board erred by giving conclusive weight to the State Department country report's statement that Latvia had a "free and fair" parliamentary election in 1996 and that human rights in Latvia are "generally respected"); *Kataria v. INS*, 232 F.3d 1107, 1115 (9th Cir. 2000) (finding that a State Department Profile which, *inter alia*, described the level of violence in the country of origin as "only 'lower,'" was not enough to rebut the presumption of a well-founded fear). On remand, we expect that this State Department report will be given the weight it is due. *See Galina*, 213 F.3d at 959 (warning that State Department reports warrant a "healthy skepticism" and the BIA should not treat them as "Holy Writ").

### III.  CONCLUSION

We therefore VACATE the BIA's order and REMAND for further proceedings in accordance with this opinion.[4] *See INS v. Ventura*, 537 U.S. 12, 16-17 (2002) (holding that absent rare circumstances, it is not appropriate for a court of appeals to grant asylum in the first instance). Although the choice of a hearing officer is left to the discretion of the BIA, we urge the BIA to assign a different judge to the Baces' case on remand. *Cf.* Circuit Rule 36 of the United States Court of Appeals for the Seventh Circuit; *see also Georgis v. Ashcroft*, 328 F.3d 962, 970 (7th Cir. 2003). Most importantly, because the evidence of past persecution is persuasive, the burden is on the respondent to negate the

---

[4] Because we vacate the BIA's denial of asylum, we need not reach the question of the BIA's denial of petitioners' claim for withholding of removal or the petitioners' claim under the Convention Against Torture.

existence of a well-founded fear of future persecution. Further, the BIA may allow the parties to supplement the record with evidence addressing such issues as internal relocation, Albania's present-day political landscape, and the threat of future persecution. *See Chitay-Pirir*, 169 F.3d at 1081 (requesting that the Board supplement the record on remand with evidence of the current state of affairs in Guatemala); *Surita v. INS*, 95 F.3d 814, 821 (9th Cir. 1996) ("On remand, the BIA should allow the parties to supplement the record with evidence of current conditions in Fiji, and determine whether the INS can rebut, *by a preponderance of the evidence*, the regulatory presumptions regarding eligibility for asylum . . . ."); *Castaneda-Hernandez v. INS*, 826 F.2d 1526, 1531 (6th Cir. 1987) ("Finally, since we are remanding for other reasons, the Board should supplement the record in order to evaluate how present conditions in El Salvador affect petitioner's claim.").

A true Copy:

     Teste:

                  _____

                  *Clerk of the United States Court of Appeals for the Seventh Circuit*