**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued December 13, 2005
Decided January 11, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 04-2522

| | |
|---|---|
| JULIAN AHMETI, | Petition for Review of an Order of |
| *Petitioner*, | the Board of Immigration Appeals |
| v. | No. A76-785-832 |
| ALBERTO R. GONZALES, | |
| *Respondent*. | |

**ORDER**

Albanian citizen Julian Ahmeti arrived at Chicago O'Hare International Airport in November 1998 bearing a false passport.  When an immigration inspector discovered the fraud, Ahmeti revealed his true identity and requested asylum on the ground that, if returned to Albania, he would be killed because of his political affiliation.  An Immigration Judge ("IJ")  denied Ahmeti's formal application after a hearing in 2003, reasoning that he failed to establish past persecution and that, regardless, conditions in Albania had improved to the point that Ahmeti no longer had an objectively reasonable fear of future persecution.  The Board of Immigration Appeals ("BIA") affirmed without opinion.  Ahmeti has now filed a petition for review, which we deny.

Ahmeti testified at his removal hearing that he left Albania because of two incidents he attributes to his, and his family's, affiliation with Albania's Democratic Party ("DP"). The first, Ahmeti said, occurred in 1997 while he was acting as an escort for DP parliament member Uram Buka. Although Ahmeti was not formally employed by Buka or the DP, he sometimes accompanied his friend, who was Buka's assigned driver, on official business with Buka. On this day, Ahmeti recounted, he and his friend were en route to pick up Buka when they were stopped by people who punched, pistol-whipped, and warned them not to accompany Buka any longer. Although the assailants wore masks, Ahmeti recognized one of them as a neighbor who, he said, was a member of the former Communist Party and was now being paid by the Socialist Party to beat up opponents. Ahmeti surmised that he was targeted for attack because of his family's past opposition to the ousted Communists, who, Ahmeti says, have simply recast themselves as the Socialist Party. He did not report the incident to police because, he said, they would not consider the beating grounds for a complaint.

Ahmeti testified that the second incident occurred in early 1998 in connection with a rally protesting the assassination of a different DP parliament member. During what started as a peaceful demonstration, Ahmeti said, he was approached by Gezim Sadiku, the father of a woman Ahmeti had dated. Sadiku had been a state security officer with the former Communist regime and, Ahmeti believes, was at the time of this encounter a member of Albania's secret police. Sadiku warned Ahmeti that, given his family's past, he should cease all association with the DP. Ahmeti himself had been a DP member only since 1992, but his family had long opposed the Communists—one uncle was executed in 1945 and Ahmeti's father was jailed for nearly 10 years beginning in the 1950s. After that his father's movements were restricted, and until the fall of Communism, the entire family, including Ahmeti, were required to report their movements in and out of the city where they were living; Sadiku was the official to whom they reported. Immediately after this encounter with Sadiku, Ahmeti continued, the protesters became disorderly, and police apparently working for Sadiku swept in. Ahmeti and numerous others were taken to the police station and beaten with batons before being released the next day. Ahmeti afterward hid in his house, but two or three masked individuals eventually found him and warned that he should "never be in the company or go out with" Sadiku's daughter again. Ahmeti never reported this threat to the police but complied with the demand because, he said, he feared Sadiku might kill him if he continued the relationship.

Ahmeti testified that these incidents lead him to believe that former Communists opposed to the DP now work for Albania's secret police and thus continue to hold considerable power in the government. He fears being killed, then, if he is returned to Albania. Ahmeti's father, Fehim Ahmeti, testified that he, too,

believes Sadiku has the ability to harm his son.  Fehim, who was granted asylum in 1996, testified that after he moved to the United States a friend in Albania alerted him that Sadiku had been looking for him and, not finding him, had commented that he still had Ahmeti as a "hostage."  Fehim explained that Sadiku knew his family because the Communists had assigned him to oversee the area where Fehim was "interned" with his family.  Fehim added that friends in Albania had reported that Sadiku was still "involved with" or "employed by" the Albanian government.

The United States government, on the other hand, maintained that Ahmeti came to the United States for economic, not political, reasons and did not reasonably fear future persecution in Albania.  The government got Ahmeti to admit that he lived with extended family in Greece for three months during 1995 but returned to Albania because the living conditions were harsh and his job opportunities limited.  The government also submitted documents showing that Albania's economy collapsed shortly before Ahmeti came to the United States.  Although Ahmeti conceded that he closed his small retail clothing business in 1997, he maintained that he left Albania the following year to avoid being killed.  Finally, the government presented a State Department country report recounting that Albania's political climate had stabilized: as of 2001 the DP was participating "in most parliamentary activity," and all parties had been "active in most of the country" without experiencing "a pattern of mistreatment" or the "post-Communist tradition of retribution."  U.S. Dep't of State, Bureau of Democracy, Human Rights, and Labor, *Albania: Profile of Asylum Claims and Country Conditions* 5-6 (May 2001).

The IJ credited Ahmeti's testimony but nevertheless denied relief.  The IJ reasoned, first, that Ahmeti could not establish past persecution on account of his family's political views because the situation in Albania had changed so extensively since the fall of Communism that the incidents Ahmeti experienced in 1997 and 1998 could not be attributed to political activities undertaken by his family in the 1940s.  The IJ then concluded that Ahmeti's own encounters with the authorities did not rise to the level of persecution and that, although Ahmeti may have a subjective fear of returning to Albania, his fear is not objectively reasonable because country reports evidence that Albania's government no longer systematically abuses DP members.  Moreover, the IJ observed that when Ahmeti lived in Albania his purported fear was not great enough to dissuade him from dating his alleged persecutor's daughter, running a business, or returning to his home when he decided that living conditions in Greece were too harsh.

Before this court Ahmeti contends that the IJ misinterpreted "persecution" to exclude all abuses short of threats to life or freedom.  The IJ should have taken into account the totality of the abuses he suffered, Ahmeti insists, including the lengthy period during which he was interned with the rest of the family because of his

father's anti-Communist activities.  Ahemti also maintains that even if those punishments do not rise to the level of past persecution he nevertheless established a well-founded fear of future persecution if returned to Albania.

Where, as here, the Board adopts the IJ's reasoning without opinion, we review the IJ's decision directly and will uphold the denial of asylum so long as that decision is supported by substantial evidence.  *Rodriguez Galicia v. Gonzales*, 422 F.3d 529, 535 (7th Cir. 2005).  Under the substantial evidence standard, an applicant must demonstrate that the record not only supports, but compels, reversal of the IJ's decision.  *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *Medhin v. Ashcroft*, 350 F.3d 685, 689 (7th Cir. 2003).

We start with the question of past persecution.  Persecution is punishment inflicted on account of a person's race, religion, nationality, membership in a social group, or political opinion and encompasses conduct beyond threats to life or freedom.  *Bace v. Ashcroft*, 352 F.3d 1133, 1137-38 (7th Cir. 2003).  Physical abuse may rise to the level of persecution if sufficiently severe, *Capric v. Ashcroft*, 355 F.3d 1075, 1084 (7th Cir. 2004), but mere harassment does not, *Bace*, 352 F.3d at 1138.  An applicant who proves past persecution is presumed to have a well-founded fear of future persecution, although the government may rebut the presumption by showing that the applicant's fear of returning to his country is no longer objectively reasonable in light of changed conditions.  8 C.F.R. § 208.13(b)(1); *Capric*, 355 F.3d at 1084.

As an initial matter, it appears that Ahmeti never presented to the IJ or the BIA any argument that his internment as a child constituted past persecution, so the immigration judge did not address this question.  Ahmeti's testimony concerning his purported internment consisted of one statement offered to establish that he recognized Sadiku as the government official who until 1991 monitored the movements of his family members in and out of the city where they lived; Ahmeti never said in his testimony that he was interned.  The only testimony concerning internment came indirectly through his father, but even Fehim said nothing more than that the family was required to live in an "internment place."  Ahmeti presented no evidence to establish the terms or conditions of his confinement, nor did he ask the IJ or the BIA to consider his internment as a separate instance of persecution.  *See Bosede v. Ashcroft*, 309 F.3d 441, 447 (7th Cir. 2002) (holding that before an applicant is entitled to judicial review he must give immigration authorities an opportunity to consider the issue).

The IJ, however, did evaluate but reject the broader argument that abuses suffered by Ahmeti's family, including their internment, constituted past persecution.  Those events, the IJ concluded, were not relevant to Ahmeti's application for asylum because they resulted from "different circumstances during

Soviet-era Communist Party rule in Albania." The same reasoning applies to the narrower question of Ahmeti's childhood internment. By presenting evidence that all parties now participate in Albanian politics without systemic mistreatment or retribution, *see Albania: Profile of Asylum Claims and Country Conditions, supra,* the government rebutted any presumption that persecution traceable to the former Communist regime will recur. Moreover, in 2005, more than two years after Ahmeti's asylum hearing, the DP gained political dominance. U.S. Dep't of State, Bureau of European and Eurasian Affairs, *Background Note: Albania* (Sept. 2005), http://www.state.gov./r/pa/ei/bgn/3235.htm; *see Balogun v. Ashcroft*, 374 F.3d 492, 506-07 (7th Cir. 2004) (noting that this court may take judicial notice of country conditions documented in State Department reports not considered by the IJ). Likewise, Ahmeti's own testimony established that he departed the internment area following the Communist government's ouster and that afterwards he operated his own business, traveled outside Albania, and returned without fear of reprisal by the reigning government. In light of this evidence, Ahmeti's fears based upon his internment under the Communist regime are not objectively reasonable. *See Tamas-Mercea v. Reno*, 222 F.3d 417, 427 (7th Cir. 2000) (reasoning that applicant's fear of persecution based upon acts committed by former Communist regime was not objectively reasonable since that regime was no longer in power); *Mitev v. INS*, 67 F.3d 1325, 1332-33 (7th Cir. 1995) (reasoning that applicant could not harbor well-founded fear of persecution due to past involvement in anti-communist trade union since union was now major political player in applicant's home country).

What Ahmeti is left with, then, are the incidents in 1997 and 1998. Those abuses are attributable to the Socialist Party that was in power at the time, but fall well short of what we have recognized as persecution. Extended detentions accompanied by persistent physical abuse may well rise to the level of persecution. *See, e.g., Soumahoro v. Gonzales,* 415 F.3d 732, 737-38 (7th Cir. 2005) (suggesting that two-week imprisonment characterized by regular beatings and inadequate food and water may constitute persecution); *Bace*, 352 F.3d at 1138 (finding compelling case of persecution based on month-long detention, physical mistreatment, and threats); *Asani v. INS,* 154 F.3d 719, 722-23 (7th Cir. 1998) (recognizing that two-week detention accompanied by regular beatings may be persecution). But brief detentions, threats, and isolated acts of violence generally do not constitute persecution. *See, e.g., Prela v. Ashcroft*, 394 F.3d 515, 518 (7th Cir. 2005) (finding no persecution where applicant was repeatedly interrogated by police but detained only once for 24 hours and beaten, resulting in injury to his hand); *Bereza v. INS*, 115 F.3d 468, 471-72 (7th Cir. 1997) (finding no persecution where applicant detained two times for no longer than 24 hours each and beaten to effect each arrest); *Topalli v. Gonzales*, 417 F.3d 128, 132 (1st Cir. 2005) (finding no persecution where applicant was detained and beaten seven times); *Bocova v. Gonzales*, 412 F.3d 257, 263 (1st Cir. 2005) (finding no persecution where, on two separate occasions, applicant was arrested, beaten, and threatened with death).

Here, Ahmeti was detained overnight only once, suffered two beatings that did not compel medical attention or prompt complaints of physical injury, and was threatened on three occasions. Although such actions are deplorable, they do not rise to the level of persecution.

Because Ahmeti failed to establish past persecution, he does not gain the presumption of a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b). He nonetheless maintains that, based upon his father's testimony that friends said Sadiku was still employed by the Albanian government as well as Ahmeti's own testimony regarding his two encounters with members of the Socialist Party and his belief that Sadiku still wields control over Albania's secret police, he established an objectively reasonable fear of future persecution. *See Jamal-Daoud v. Gonzales*, 403 F.3d 918, 922 (7th Cir. 2005) (holding that if applicant fails to establish past persecution he is required to prove a genuine and objectively reasonable fear of future persecution on account of one of the enumerated grounds).

An applicant's conjecture about "current political conditions in a country [he] left years ago," however, will not furnish grounds upon which we may reverse, given the deference due the IJ's decision. *Gramatikov v. INS,* 128 F.3d 619, 620 (7th Cir. 1997). The IJ was entitled to give considerable weight to the State Department's report in determining whether Ahmeti's fear of future persecution is objectively reasonable. *See id.*; *Toptchev v. INS*, 295 F.3d 714, 722 (7th Cir. 2002). In this case the IJ explained that, not only did the country reports document a substantial change in Albania's political climate, but Ahmeti's own testimony that he ran a business, dated Sadiku's daughter, and freely returned to Albania after resettling with relatives in Greece undermined his claim that he fears future persecution if returned to Albania. Moreover, after the IJ's decision, the political situation in Albania has continued to improve, with the DP recently regaining power. That change in government further erodes Ahmeti's claim for asylum.

Finally, we cannot ignore that Ahmeti was required to show that he fears persecution "on account of" a protected ground. 8 U.S.C. § 1101(a)(42)(A). Although Ahmeti claims that Sadiku's threats were directed against him because of his affiliation with the DP, his testimony established only that Sadiku's thugs warned him to stay away from Sadiku's daughter. Ahmeti thus may fear future encounters with Sadiku upon his return to Albania, but he failed to prove that any potential harm would be "on account of" anything other than a personal dispute. *See Kharkhan v. Ashcroft*, 336 F.3d 601, 605 (7th Cir. 2003) (holding that applicant's fear of exposure to "dangers of an uncontrolled criminal element" did not demonstrate fear of persecution on protected ground); *see also Adebisi v. INS*, 952 F.2d 910, 913 (5th Cir. 1992) (concluding that applicant failed to show fear of persecution on account of tribe membership as opposed to personal dispute among tribe members).

Thus there is no basis in the record to compel reversal of the IJ's decision.

DENIED.