**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 4, 2006
Decided June 6, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 05-2050

| | |
|---|---|
| ALEKSANDR AZIMOV,<br>    *Petitioner,* | Petition for Review of an Order of the<br>Board of Immigration Appeals. |
| *v.* | No. A95-402-327 |
| ALBERTO GONZALES,<br>    *Respondent.* | |

**O R D E R**

Aleksandr Azimov, a native and citizen of Russia, entered the United States as a non-immigrant visitor and overstayed his visa. He filed for asylum, withholding of removal, and protection under the Convention Against Torture, claiming that he suffered persecution based on his practice of the Jehovah's Witness faith. An IJ denied relief. The BIA affirmed. We deny Azimov's petition for review.

## I. Background

The facts of the case are not in dispute, as the IJ credited petitioner's testimony in full. Azimov was born in Russia, but moved with his family to Uzbekistan at a young age. He began to attend clandestine Jehovah's Witness meetings with his mother at the age of ten or eleven. Azimov moved to Moscow in

1992.  He had trouble locating a Jehovah's Witness community at first, but in 1995 he joined the Zharizhin Jehovah's Witness group.  In 1999, the head of the Zharizhin group authorized Azimov to go door-to-door and preach in the Tsaritsino township.  After he began proselytizing, young people in the community harassed him and told him to leave the country because it is Orthodox.  Beginning in 2000, Azimov began receiving sporadic harassing telephone calls.  The callers would threaten to beat him, kill him, set his apartment on fire, and rape his wife.  Several times, groups of young people would block his way in hallways, throw bottles and snowballs at him, yell profanities, and tell him to leave.  He also received an anonymous letter warning him to get out of the country.  He reported the threats to the police.  The police laughed at him and asked him why he wasn't Orthodox.  Then the police told him not to pay attention to the threats because they were just phone calls.

On January 25, 2001, Azimov was attacked.  The doorbell rang, and when he opened the door, three or four men forced their way into the apartment.  The first man in the apartment punched Azimov in the stomach, and then the group dragged him into the kitchen, where they threw him to the floor and beat him.  Azimov recounted that the men said he had been warned and should not have taken the calls and suggestions to stop proselytizing as jokes.  The assailants continued to beat Azimov for about an hour, striking him "very ferociously on the back" before tying him to a chair and hitting him.  They said they hoped it was his last time preaching.

When Azimov's assailants left the apartment, his wife called for an ambulance.  The paramedics took him to the hospital.  The hospital report documents that Azimov "sustained multiple injuries and bruises in his upper body, hemorrhages on his back and waist; traumas to his spinal chord [sic]."  Nothing was broken, but Azimov was in severe pain and remained in the hospital overnight.

Azimov never returned to his apartment.  After leaving the hospital he went to live with his mother-in-law and prepared to travel to the United States.  Four or five days after the attack, he reported the incident to the police.  The police took down the information and said that they would investigate and call him.  He did not hear back from the police before he left for the United States less than two months later.

The IJ, despite finding Azimov credible, held that the incidents Azimov experienced did not rise to the level of persecution.  The IJ characterized the case as close because Azimov's beating was severe.  Nevertheless, the IJ reasoned that a single beating that led only to generalized injuries was not severe enough to qualify as persecution.  The IJ also held that Azimov did not demonstrate a fear of future persecution because he and his family could relocate to a different part of the city of

Moscow, could move within Russia, or could even move to Uzbekistan where Azimov's mother still resides. The IJ also noted that the local government's refusal to register Jehovah's Witness groups in Moscow was not sufficient to attribute to authorities the actions of private citizens. Similarly, the IJ concluded that the failure of the police to identify his attackers was not a sufficient basis for finding that the government is unwilling or unable to control attacks like that on Azimov. Azimov appealed to the BIA and moved the BIA to consider new evidence that courts in Moscow had upheld the local government's refusal to allow Jehovah's Witness groups to register. The BIA adopted the decision of the IJ and refused Azimov's request to submit additional evidence.[1] Azimov makes no argument challenging the denial of his motion to consider new evidence.

## II. Analysis

Where the BIA adopts an IJ's order but also supplements the order with its own determinations, the IJ's decision, as supplemented, becomes the final decision of the BIA. *Giday v. Gonzales*, 434 F.3d 543, 547 (7th Cir. 2006). We review the BIA's factual determinations under the highly deferential substantial-evidence standard and may not reverse merely because we might have decided the case differently. *Kllokoqi v. Gonzales*, 439 F.3d 336, 341 (7th Cir. 2005). Rather, we must be convinced that the evidence compels a decision contrary to the BIA's. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *Diallo v. Ashcroft*, 381 F.3d 687, 698 (7th Cir. 2004).

To qualify for asylum, Azimov was required to show that he is a refugee—a person who has suffered past persecution or has a well-founded fear of future persecution based on one of the statutorily protected categories, including, religion. *See* 8 U.S.C. § 1101(a)(42)(A); *Giday v. Gonzales*, 434 F.3d 543, 553 (7th Cir. 2006); *Fessehaye v. Gonzales*, 414 F.3d 746, 754 (7th Cir. 2005). The INA "presumes that an applicant who has endured past persecution has a well-founded fear of future persecution–a presumption that [DHS] may rebut by demonstrating a change in circumstances or a reasonable ability on the applicant's part to relocate within the applicant's country." *Giday*, 434 F.3d at 553 (citing 8 C.F.R. § 208.13(b)(1); *Diallo v. Ashcroft*, 381 F.3d 687, 697 (7th Cir. 2004)). This court has held that "persecution"

---

[1] Asimov argues that the BIA's order erroneously stated that upon a finding of past persecution the burden is on the petitioner to demonstrate that he could not relocate within his country. The error appears to be typographical because in the parenthetical immediately following the sentence in question the BIA correctly states that the burden shifts to the government after the petitioner demonstrates past persecution. In any event the BIA's error is harmless because, as we discuss below, Azimov has not established past persecution.

need not be threats to life or freedom, but the"'actions must rise above the level of mere harassment to constitute persecution.'" *Bace v. Ashcroft*, 352 F.3d 1133, 1137-38 (7th Cir. 2003) (quoting *Ambati v. Reno*, 233 F.3d 1054, 1060 (7th Cir. 2000)).

## A.    Past Persecution

Azimov first argues that the attack he suffered in his home because of his religion was severe enough to constitute persecution.  This court has generally found that specific allegations of serious physical abuse compel a finding of persecution.  *See Soumahoro v. Gonzales*, 415 F.3d 732, 737 (7th Cir. 2005) (per curiam) (holding that two-week imprisonment during which petitioner was beaten regularly, denied food and water, and had salt rubbed in his wounds constitutes persecution); *Bace*, 352 F.3d at 1138 (holding that petitioner presented compelling case of persecution where he was beaten four times in less than two months, cut with a razor, and forced to watch his wife being raped); *Asani v. INS*, 154 F.3d 719, 723 (7th Cir. 1998) (questioning BIA's finding that petitioner who had two teeth knocked out and was handcuffed to a radiator for two weeks in a cell too small to sit down in was not persecuted).  In contrast, mere short-term imprisonment with no physical abuse or only generalized, non-specific assertions of physical abuse generally has been deemed insufficient.  *See Prela v. Ashcroft*, 394 F.3d 515, 518 (7th Cir. 2005) (holding that evidence of 24-hour detention coupled with beating that caused injury to petitioner's hands did not compel finding of persecution); *Dandan v. Ashcroft*, 339 F.3d 567, 573-74 (7th Cir. 2003) (holding that evidence of three-day detention without food coupled with beating that caused petitioner's face to become swollen did not compel finding of persecution); *Zalega v. INS*, 916 F.2d 1257, 1260 (7th Cir. 1990) (holding that evidence of periodic detention without physical abuse did not compel finding of persecution).

The IJ called it a close determination whether the attack on Azimov was serious enough to constitute persecution.  We agree that the question is close, but do not think the overall record compels a finding of persecution.  Although this circuit has recognized that a single beating may rise to the level of persecution if the beating is severe enough, *see Asani*, 154 F.3d at 723; *Vaduva v. INS*, 131 F.3d 689, 690 (7th Cir. 1997) (holding that single beating in which petitioner was punched and bruised and had his finger broken constituted past persecution), Azimov's allegations more closely resemble the facts in *Prela* and *Dandan*.  Azimov was never detained or imprisoned.  He testified in detail about the attack, but not the injuries he suffered.  The hospital report states there were no broken bones, but notes "bruises," "hemorrhages," and "traumas."  These sound like the general claims of "swelling" and "injury" found not to constitute persecution in *Dandan* and *Prela*.  In addition, Azimov was well enough to leave the hospital the next day and travel to the United States within weeks.

Moreover, the IJ observed that the local authorities were not implicated in the attack on Azimov. Persecution "is something a *government* does, either directly or by abetting (and thus becoming responsible for) private discrimination by throwing in its lot with the deeds or by providing protection so ineffectual that it becomes a sensible inference that the government sponsors the misconduct." *Hor v. Gonzales*, 400 F.3d 482, 485 (7th Cir. 2005) (emphasis in original). Azimov argues that the attack was attributable to the government because the police refused his requests for assistance and asked him why he was not Orthodox. But he mischaracterizes his own evidence. The account he gave the IJ was that the police made unhelpful comments when he reported the harassing telephone calls, but accepted his report and opened an investigation when he later complained about the beating. And Azimov did nothing to prove that the police were unwilling or unable to investigate the attack; all he said is that he wasn't contacted by the time he left for the United States less than two months later. Therefore he has not shown the type of action that represents a government unable or unwilling to control violence directed at him. *See Bucur v. INS*, 109 F.3d 399, 403 (7th Cir. 1997) ("a pattern of private discrimination or of low-level, ad hoc, official discrimination" insufficient to show persecution).

Azimov also argues that "throughout Russia, the government authorities harassed JW's as a group." He offers no citation to the record that was before the IJ and again mischaracterizes the evidence. The 2002 International Religious Freedom Report, which was submitted to the IJ, indicates that Jehovah's Witness communities have been allowed to form throughout Russia, encountering only isolated resistance. (*See, e.g.,* U.S. Dept. of State, INT'L RELIGIOUS FREEDOM REPORT 2002: RUSSIA, p. 6 (Oct. 2002) ("Jehovah's Witnesses have managed to reregister the vast majority of their previously existing religious organizations and a religious center, however they have experienced problems registering in a few locations."); *Id.* at 10 (reporting incident in which four foreign Jehovah's Witness missionaries were not allowed to register in Moscow but were able to relocate to other cities in Russia).)

## B.   Fear of Future Persecution

Azimov also argues that he has shown a reasonable fear of future persecution because of the actions of local authorities in Moscow refusing to register Jehvoah's Witness communities. An asylum seeker who fails to demonstrate past persecution can still establish a genuine fear of future persecution based on credible, direct, and specific evidence that a reasonable person in the same circumstances would fear persecution if returned. *Giday v. Gonzales*, 434 F.3d 543, 553 (7th Cir. 2006); *Hernandez-Baena v. Gonzales*, 417 F.3d 720, 723 (7th Cir. 2005). But in such a case the asylum seeker "'shall bear the burden of establishing that it would not be

reasonable for him or her to relocate.'" *Rashiah v. Ashcroft*, 388 F.3d 1126, 1132 (7th Cir. 2004) (quoting 8 C.F.R. § 208.13(b)(3)(i)).

Azimov concedes in his brief that Jehovah's Witnesses are not prevented from registering throughout Russia and focuses his argument on the city of Moscow. He cites the 2002 International Religious Freedom Report for the proposition that domestic travel within Russia is restricted and, if returned, he may not be allowed to leave Moscow and thus will be unable to practice his religion. But the report discusses travel restrictions and registration for those moving *into* large cities, such as Moscow. It makes no mention of restricting travel of those moving *out* of large cities. And the report indicates only that some regional governments require registration. Azimov presented no evidence that he applied for, and was denied, travel documents. The record does not compel this court to overturn the IJ's finding that Azimov does not have a well-founded fear of future persecution. Azimov's petition for review is

DENIED.