NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Submitted April 17, 2007[*]
Decided April 18, 2007

**Before**

Hon. FRANK H. EASTERBROOK, *Chief Judge*

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 06-3475

| | |
|---|---|
| MEI HUA ZHOU | Petition for Review of an Order of |
| *Petitioner,* | the Board of Immigration Appeals |
| | |
| *v.* | No. A78 015 948 |
| | |
| ALBERTO R. GONZALES, | |
| *Respondent.* | |

**O R D E R**

Mei Hua Zhou asserts that the Chinese government forced her to undergo an abortion in the eighth month of her pregnancy and that she fears involuntary sterilization, detention, and physical abuse if she returns to China. Zhou applied for asylum, withholding of removal, and protection under the Convention against Torture, but the Immigration Judge denied her relief after finding her testimony

---

[*] On March 12, 2007, we granted the petitioner's motion to waive oral argument. Therefore, the petition for review is submitted on the briefs and the record. *See* Fed. R. App. P. 34(f).

not credible and faulting her for not submitting hospital records to corroborate her abortion account. The Board of Immigration Appeals affirmed, and Zhou petitions for review. We grant the petition because the IJ's adverse credibility determination is not supported by substantial evidence and he demanded corroborating evidence without explaining if that evidence would have been available to Zhou.

Zhou arrived in the United States in July 2002 at the Los Angeles International Airport, but she did not present a valid passport and visa, and consequently an immigration officer placed her under oath and interviewed her at the airport. This interview was conducted in Mandarin, although Zhou is unfamiliar with this language and speaks the Fuzhou dialect. During this interview, Zhou stated that she flew in from London, where she had been on vacation. There, by chance encounter on the street, she met a "Brother Li" who convinced her to apply for asylum in the United States and for $3,000 provided her with a false passport to get there. Zhou then added that she left China to avoid an arranged marriage, but she did not mention undergoing a forced abortion. She was briefly detained following this interview and eventually placed in removal proceedings.

Zhou later conceded that she is removable. But at a June 2003 preliminary hearing before an immigration court in New York, she, with the help of counsel, filed an application for asylum claiming political persecution on account of her opposition to China's coercive population control program. In an affidavit attached to this application, Zhou explained that in 1994 she became pregnant but was not allowed to marry the father because he was below the legal age of consent for marriage. Having a child out of wedlock was prohibited by the family planning laws, so Zhou hid at her sister and brother-in-law's house awaiting the birth of her child. But according to her affidavit, four or five family planning officials came to her sister's home eight months into her pregnancy. She was there alone, and the officials dragged her to a hospital and forcibly aborted her pregnancy by giving her an injection that caused "horrible pain" and induced her to deliver a dead fetus. Zhou recounted that she and her boyfriend still married once they were old enough, but her husband lost his job as punishment for their attempt to flout the family planning policy. He left for the United States in search of work and they divorced following a four-year separation. Shortly after the divorce, Zhou decided to flee from China herself.

At the June 2003 preliminary hearing Zhou also conceded through a Fuzhou interpreter that she had lied about traveling to London before arriving in Los Angeles. Instead, she said that a smuggler named Li, whom she met in Fuzhou City, told her to inform immigration officials that she traveled through London. But she reiterated that she had been forced to terminate her pregnancy.

After filing her asylum application, Zhou married another man and gave birth to her first child. She then moved to Indiana, and venue was transferred to the immigration court in Chicago. Before her merits hearing, Zhou filed additional documents, including a supplemental asylum application adding that she fears being forcibly sterilized if returned to China since she now has a child. She also submitted an affidavit from her father confirming that she hid at her sister's home in hopes of avoiding family planning officials. He stated that he found out about the abortion only after it occurred, and that all he could do "was take her home after she was discharged from the hospital." She also submitted an affidavit from her brother-in-law confirming that she hid at his home during her pregnancy. Both affidavits corroborate the details of her account, including the date of the abortion and the hospital where the procedure occurred.

During her merits hearing Zhou testified consistently with her asylum application and the affidavits provided by her family. She explained, through a Fuzhou interpreter, that she did not know that undergoing a forced abortion could establish asylum eligibility until she was detained following her airport interview. She also added that she wants to have two more children and believes that, if she returns to China, she will be forcibly sterilized before she can. Zhou, though, reverted back to the story she gave at the airport about meeting Brother Li in London. But rather than cross-examine her about her earlier recantation of this account, the government pointed out that Zhou was now saying that she decided to apply for asylum only after being detained in the United States, which conflicted with her statement during the airport interview that Brother Li convinced her to apply for asylum while she was in London.

The IJ denied Zhou's asylum application as untimely. Zhou had filed her application with the immigration court in New York within a year of her arrival, but the IJ reasoned that it was untimely since the Chicago immigration court did not receive the application until after the one-year deadline. The IJ went on to evaluate Zhou's eligibility for withholding of removal but denied that relief after finding her not credible. The IJ reasoned that Zhou's testimony conflicted with general background information on China in two ways. First, the IJ explained, the 2003 Department of State Country Report on Human Rights Practices in China identifies a "social compensation fee" as the punishment for a single woman who bears a child. Secondly, the IJ took administrative notice of the 2004 Profile of Asylum Claims and Country Conditions, which recounts that United States officials visiting the province of Fujian have "found that coercion through public and other pressure has been used, but they do not find any cases of physical force employed in connection with abortion." The IJ also rejected as implausible Zhou's testimony that she met Brother Li by chance in London and noted that Zhou testified inconsistently about when she decided to apply for asylum. Finally, the IJ concluded that Zhou failed to provide "adequate support" for her claim of past

persecution since she "never obtained any evidence that she was forcibly aborted" like a "record of a hospital stay." The IJ reasoned that Zhou could have obtained such a document, but he pointed to no factual support for this conclusion and failed to mention the affidavits from Zhou's father and brother-in-law.

Zhou appealed. The BIA rejected the IJ's conclusion that Zhou's application was untimely, but upheld the IJ's adverse credibility finding and denied her applications for asylum, withholding, and relief under the CAT. The BIA focused on the inconsistencies in Zhou's testimony about her trip to London and how she learned about the asylum process. The BIA acknowledged that these discrepancies are "perhaps not directly pertinent to her claim of forced abortion," but nonetheless found them "not minor."

Zhou now contends that none of the IJ's reasons for rejecting her testimony are supported by substantial evidence. The IJ's adverse credibility finding is critical because her testimony if believed would have demonstrated that she suffered past persecution. *See* 8 U.S.C. § 1101(a)(42); *Dong v. Gonzales*, 421 F.3d 573, 578 (7th Cir. 2005) ("[O]ne forced abortion is sufficient to show persecution"); *Dawoud v. Gonzales*, 424 F.3d 608, 612 (7th Cir. 2005) (noting that applicant's credible testimony can sustain burden to prove asylum eligibility). And a finding of past persecution shifts to the government the burden of rebutting the presumption that an applicant has a well-founded fear of future persecution. *Bace v. Ashcroft*, 352 F.3d 1133, 1137 (7th Cir. 2003). Since the BIA approved with some additions the IJ's decision, that decision, as supplemented, is the basis for our review. *See Prela v. Ashcroft*, 394 F.3d 515, 518 (7th Cir. 2005). We review the decision—including the adverse credibility finding—under the substantial evidence standard. *Id*. We will overturn an IJ's adverse credibility determination if it is not supported by "specific, cogent reasons" that "bear a legitimate nexus to the finding." *Gjerazi v. Gonzales*, 435 F.3d 800, 807 (7th Cir. 2006) (citations and quotations omitted).

Zhou contends, and we agree, that the IJ erroneously discounted her testimony on account of perceived conflicts with general background reports released by the Department of State. The contradictions between Zhou's account and the reports are illusory; indeed, the relevant Department of State reports tend to support Zhou's testimony. The reports on which the IJ relied summarize events that occurred in 2003, seven years after the relevant time period. According to the country report for 1995, "Chinese officials acknowledge that there are instances of forced abortions," COUNTRY REPORTS ON HUMAN RIGHTS PRACTICES FOR 1995: CHINA, U.S. DEPT. OF STATE 581 (1996), and the same report for 1996 notes that there were "credible reports that several women were forced to undergo abortions of unauthorized pregnancies in Fujian," COUNTRY REPORTS ON HUMAN RIGHTS PRACTICES FOR 1996: CHINA, U.S. DEPT. OF STATE (1997), *available at*

http://www.state.gov/www/global/human_rights/1996_hrp_report/china.html (last visited March 27, 2007). *See Giday v. Gonzales*, 434 F.3d 543, 556 (7th Cir. 2006) (taking judicial notice of Department of State reports); *Medhin v. Ashcroft*, 350 F.3d 685, 689-90 (7th Cir. 2003) (same).

Nor can the IJ depend on country reports suggesting that China does not generally force women to abort their pregnancies to refute Zhou's consistent testimony of undergoing a forced abortion, especially when those reports do not rule out the possibility that forced abortions occur. We rejected this very reasoning in *Dong*, 421 F.3d at 578; *see also Kllokoqi v. Gonzales*, 439 F.3d 336, 343 (7th Cir. 2006)*; Zhang v. Gonzales*, 434 F.3d 993, 1000 (7th Cir. 2006)*; Lin v. Ashcroft*, 385 F.3d 748, 754 (7th Cir. 2004); *Bace*, 352 F.3d at 1139 (noting that it "would be improper to find that a witness's testimony about specific events could be 'contradicted' by a generalized State Department report broadly discussing conditions in the applicant's country of origin"). The country report for 2003 does state that a social compensation fee is the official punishment for a single woman who bears a child out of wedlock, but that same report acknowledges that "intense pressure to meet birth limitation targets set by government regulations has resulted in instances of local birth planning officials reportedly using physical coercion to meet government goals." And although the profile of asylum claims for 2004 recounts that the Department of State found no proof that officials in Fujian currently force women to abort their pregnancies, the report acknowledges that the "use of physical coercion is difficult to document, even for government authorities." Even still, the profile notes that the press has reported the continued use of forced abortions in certain parts of China. Neither report rules out the possibility that forced abortions occur in China; thus, the IJ erred in using the reports to reject Zhou's account.

Zhou also maintains that the IJ improperly denied relief based on her inability to produce documentary evidence of her forced abortion, like a record of her hospital stay. The IJ declared that such a hospital record is "information that [Zhou] could have obtained and did not," but did not explain this conclusion. We must defer to an IJ's determination that corroborating evidence is available, *see* REAL ID Act of 2005 § 101(e), 8 U.S.C. § 1252(b)(4), but the "precondition to deference is that the immigration judge explain (unless it is obvious) why he thinks corroborating evidence, if it existed, would have been available to the alien."[1] *Hor v.*

---

[1] Under the REAL ID Act of 2005, Pub. L. No. 109-13, § 101(a)(3)(B)(ii), 119 Stat. 231, an IJ may require an otherwise credible applicant to provide corroborating evidence unless the applicant does not have the evidence and cannot reasonably obtain it. This provision, unlike § 101(e), which cabins our scope of

(continued...)

*Gonzales*, 421 F.3d 497, 501 (7th Cir. 2005); *see also Diallo v. Gonzales*, 439 F.3d 764, 766 (7th Cir. 2006); *Zhang*, 434 F.3d at 998-99. Here, the IJ failed to meet this precondition; he did not explain why he thought the hospital would document a forced abortion or an associated stay at the hospital, let alone give Zhou a copy of such a record. Indeed, since Zhou's hearing we have repeatedly held that the absence of such a hospital record provides no reason to doubt an applicant's account of a forced abortion. *See Kwok v. Gonzales*, 455 F.3d 766, 771 (7th Cir. 2006); *Zhang*, 434 F.3d at 999-1000; *Lin*, 385 F.3d at 753-54. And we have even upheld an adverse credibility finding *because* an applicant presented the same type of record that the IJ expected Zhou to produce; we observed that the existence of such a certificate suggests that the applicant underwent an abortion voluntarily. *See Huang v. Gonzales*, 453 F.3d 942, 947 (7th Cir. 2006).

We also are troubled that the IJ concluded that Zhou had "not really provided adequate support" for her account, but failed to mention the affidavits from her father and brother-in-law. Both affidavits corroborate Zhou's consistent testimony, including the details of when the abortion took place, where the family planning officials apprehended Zhou, and at which hospital the procedure occurred. Zhou's father confirmed that he picked Zhou up from the hospital following the abortion, and her brother-in-law confirmed that she hid at his home during her pregnancy to avoid a forced abortion by the family planning officials. *See Ayi v. Gonzales*, 460 F.3d 876, 883-84 (7th Cir. 2006) (reversing credibility finding that disregarded asylum applicant's evidence without explanation); *Gjerazi*, 435 F.3d at 813 ("[A]n applicant is entitled reasoned analysis, not one which wholly ignores or disregards relevant, probative evidence."); *Sosnovskaia v. Gonzales*, 421 F.3d 589, 593 (7th Cir. 2005) (holding that it is improper for IJ to ignore letter from alien's mother that corroborates asylum claim).

Finally, Zhou contends that the remaining reasons that the IJ discredited her testimony do not go to the heart of her asylum claim, and therefore cannot form the basis of the adverse credibility finding. Misrepresentations that do not relate to the basis of an asylum applicant's alleged fear of persecution can serve as "*a factor* in the credibility calculus," *Balogun v. Ashcroft*, 374 F.3d 492, 504 (7th Cir. 2004) (emphasis in original), but an adverse credibility finding cannot rest solely on such minor, immaterial inconsistencies, *see Adekpe v. Gonzales*, No. 05-3951, 2007 U.S. App. LEXIS 5840, at *16, *24 (7th Cir. Mar. 14, 2007) (vacating credibility determination based on inconsistencies that do not "go to the heart of the asylum

---

[1](...continued)
review, affects only asylum applications filed after May 11, 2005, and therefore did not apply at Zhou's hearing before the IJ. *See Dawoud v. Gonzales*, 424 F.3d 608, 613 (7th Cir. 2005).

applicant's claim"); *Rodriguez Galicia v. Gonzales*, 422 F.3d 529, 537 (7th Cir. 2005) (same); *Uwase v. Ashcroft*, 349 F.3d 1039, 1043 (7th Cir. 2003) (same).

The BIA acknowledged that the remaining discrepancies—Zhou's inconsistent testimony regarding whether she obtained false documents to enter the United States in London or China and whether she decided to apply for asylum en route to the United States or once she was detained here—were "perhaps not directly pertinent to her claim of forced abortion," and we agree. *See Rodriguez Galicia*, 422 F.3d at 537-38 (noting that inconsistencies regarding how asylum applicant obtained false passport to enter the United States were irrelevant to heart of asylum claim); *Dong*, 421 F.3d at 579 (noting that "use of false documents to enter the United States has no bearing on whether [applicant] was forced to terminate her pregnancy"). In fact, Zhou testified consistently about the circumstances of her forced abortion in an affidavit attached to her asylum application, during a preliminary hearing, and during her merits hearing. The immaterial inconsistencies are the only remaining basis articulated by the IJ for his adverse credibility finding, and although the IJ did not err in considering them, they cannot alone justify that finding. Having concluded that the other reasons given by the IJ to discredit Zhou's testimony are unsupported, we cannot affirm the IJ's decision on this weak ground. *See Dong*, 421 F.3d at 579 (concluding that inconsistent statements are valid reasons for discrediting alien, but alone are too weak to save the IJ's otherwise undermined adverse credibility finding); *Georgis v. Ashcroft*, 328 F.3d 962, 969-70 (7th Cir. 2003) (refusing to defer to IJ's credibility determination after concluding that five out of the IJ's six reasons were unsupported).

Accordingly, the petition for review is GRANTED, the order of removal is VACATED, and this case is REMANDED for further proceedings.