# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 03-3470

YOULUA SOSNOVSKAIA,

*Petitioner,*

*v.*

ALBERTO R. GONZALES,[1]

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A73 403 141.

ARGUED SEPTEMBER 21, 2004—DECIDED AUGUST 31, 2005

Before EASTERBROOK, RIPPLE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Youlua Sosnovskaia, a Ukrainian national, was admitted to the United States on February 8, 1995, as a nonimmigrant visitor for pleasure. Later that year she applied for asylum, claiming she feared persecution in Ukraine based on her religion. An immigration judge ("IJ") initially declared Ms. Sosnov-

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), we have substituted the current Attorney General of the United States, Alberto R. Gonzales, for his predecessor as the named respondent.

skaia's testimony incredible and denied her application. However, the Board of Immigration Appeals ("BIA") reversed this ruling, finding Ms. Sosnovskaia credible and remanding the case to the IJ. On remand, the IJ again denied Ms. Sosnovskaia's application, and this time the BIA affirmed the IJ's decision without comment. As we find that the IJ failed to give due consideration to the evidence favoring Ms. Sosnovskaia, we grant the petition for review and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Ms. Sosnovskaia is a native-born citizen of Ukraine. The product of a mixed Russian-Jewish marriage, she has always considered herself Jewish and practiced the Jewish religion. While the parties dispute the current strength of anti-Semitism in Ukraine, they agree that it was widespread in earlier years, and Ms. Sosnovskaia has testified that she suffered individually before she came to the United States.

Representative incidents from her testimony include a rape, a groundless arrest, and several beatings, all of which she ascribes to anti-Semitic animus. As disturbing as these events are, Ms. Sosnovskaia has also testified that a fellow member of an organization dedicated to saving a Jewish cemetery died after an anti-Semitic group poisoned her.

Ms. Sosnovskaia came to the United States on February 8, 1995, entering as a nonimmigrant visitor for pleasure. She applied for asylum on July 17, 1995. Noting that Ms. Sosnovskaia's authorization to stay in the country expired on August 7, 1995, the Immigration and Naturaliza-

tion Service ("INS")[2] initiated removal procedures against her on August 25, 1995, pursuant to 8 U.S.C. § 1251(a)(1) (C)(i) (1994) (currently codified at 8 U.S.C. § 1227(a)(1) (C)(i) (2000)).

On December 13, 1995, the IJ assigned to Ms. Sosnovskaia's case denied her applications for asylum and withholding of removal, declaring her testimony not credible, but granted Ms. Sosnovskaia's request for voluntary departure. The BIA reversed the IJ in part, holding on July 10, 1997, that Ms. Sosnovskaia's testimony was indeed credible and demonstrated that she had suffered past persecution.

On remand, the Agency put forward substantial evidence in support of the proposition that the situation in Ukraine had changed fundamentally since the time of Ms. Sosnovskaia's earlier persecution. It cited a decrease in government tolerance of anti-Semitism, an increase in the number of Jewish schools and synagogues, and a set of newly elected Jewish mayors. The Agency relied primarily on Country Reports from the State Department to support its arguments.

To rebut the Agency's claim that anti-Semitism was on the wane in Ukraine, Ms. Sosnovskaia submitted contemporaneous news articles and reports from Jewish advocacy groups regarding ongoing discrimination in the country. Ms. Sosnovskaia bolstered her case with a recent letter from her mother, who delivered her own view of the situation in Ukraine, where she still lived.

---

[2] On March 1, 2003, Congress transferred the functions of the old INS to the new Department of Homeland Security ("DHS"). As the precise title of the government body seeking Ms. Sosnovskaia's deportation has no bearing on the instant appeal, we shall hereinafter refer to both divisions as simply "the Agency." *Cf. Diallo v. Ashcroft*, 381 F.3d 687, 690 n.1 (7th Cir. 2004).

In response to the Agency's suggestion that she relocate within Ukraine, Ms. Sosnovskaia made two arguments. First, she submitted additional news articles that detailed ongoing anti-Semitic discrimination in the supposedly safe areas. Second, she argued that internal relocation was legally infeasible for her on account of Ukraine's "*propiska*" system. Under that system, a party who desires to move from one city to another must first demonstrate that he or she has arranged a job and a place to live in the destination city. Without a grant of *propiska* a party is not permitted to move internally within Ukraine.

The Agency acknowledged that such a *propiska* system existed in the past but argued that the modern Ukraine no longer enforced such draconian limits on internal relocation. As proof of the *propiska* system's continuing force, Ms. Sosnovskaia presented a document she claimed had come from the Ukrainian government, denying her request to move to Kiev. The Agency challenged the authenticity of that document, and forensic analysis proved inconclusive.

The IJ who first ruled against Ms. Sosnovskaia received the case again on remand. This time around, the IJ scheduled an evidentiary hearing for October 16, 2001. However, on July 3, 2001, well before the planned hearing, the IJ issued her final ruling on Ms. Sosnovskaia's case. Ms. Sosnovskaia apparently first learned of this ruling on October 16, 2001, when she appeared for the (ultimately moot) hearing.

Ms. Sosnovskaia requested and received a copy of the IJ's ruling on October 17, 2001. In the ruling, the IJ listed two reasons why Ms. Sosnovskaia's past persecution did not suffice to establish that she had a well-founded fear of future persecution. First, the IJ stated that the conditions in Ukraine had changed substantially since Ms.

Sosnovskaia last lived there. Second, the IJ held that Ms. Sosnovskaia could avoid further persecution by relocating to safer areas within Ukraine.

Ms. Sosnovskaia took issue with various facets of the IJ's ruling. In particular, she objected to the IJ's statement that she had "testified that she simply never attempted to receive the necessary documentation (the '*propiska*')." In fact, Ms. Sosnovskaia had delivered no such testimony and had lost her opportunity to testify when the IJ canceled the October 16 hearing. The IJ's ruling mentioned neither the letter Ms. Sosnovskaia had purportedly received in response to her request for a *propiska*, nor any of the other evidence Ms. Sosnovskaia had submitted, despite the BIA's finding that her testimony was credible. Rather, the IJ appeared to base her decision almost exclusively on the Country Reports, which Ms. Sosnovskaia alleged were biased.

Ms. Sosnovskaia appealed the IJ's July 3rd ruling, and the BIA declared her appeal timely in recognition of her delayed receipt of the ruling. The BIA affirmed the IJ's ruling without comment, and Ms. Sosnovskaia appealed.

## II. ANALYSIS

### A. Standard of Review

With respect to the asylum issues presented in this appeal, we have jurisdiction to review the BIA's decision pursuant to 8 U.S.C. § 1252. When the BIA affirms an IJ's ruling without opinion, we review the IJ's ruling itself, granting it the same deference we would an explicit opinion from the BIA. *Krouchevski v. Ashcroft*, 344 F.3d 670, 671 (7th Cir. 2003). In particular, we must uphold the IJ's findings of fact "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (2000); *see also Nikrodhanondha v. Reno*, 202

F.3d 922, 925 (7th Cir. 2000). This will be the case only if those findings are not "supported by reasonable, substantial, and probative evidence on the record [considered] as a whole." *Angoucheva v. INS*, 106 F.3d 781, 788 (7th Cir. 1997) (quoting 8 U.S.C. § 1105a(a)(4) (1994) (repealed 1996)) (internal quotation marks omitted) (alteration added to conform with the statute). To earn such deference, however, the IJ must "announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Mansour v. INS*, 230 F.3d 902, 908 (7th Cir. 2000) (quoting *Becerra-Jimenez v. INS*, 829 F.2d 996, 1000 (10th Cir. 1987)) (internal quotation marks omitted).

## B. Improper Analysis of Well-Founded Fear of Persecution

Based on our review of the record, we find that the IJ failed to follow proper procedure in assessing Ms. Sosnovskaia's asylum claim, thus necessitating that we vacate the IJ's ruling and remand this case to the BIA. Specifically, Ms. Sosnovskaia concedes deportability but seeks asylum, which would prevent the Agency from removing her or returning her to Ukraine. *See* 8 U.S.C. § 1158(c)(1)(A) (2000). The Secretary of Homeland Security or the Attorney General may grant asylum to aliens who apply for asylum in a timely fashion, meet certain procedural requirements, and qualify as refugees. 8 U.S.C.A. § 1158(b)(1)(A) (West 2005). A "refugee" is defined as a person who is unable or unwilling to return to the country of her nationality because of "persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." 8 U.S.C. § 1101(a)(42)(A) (2005); *Zheng v. Gonzales*, 409 F.3d 804, 808 (7th Cir. 2005).

Applicants for asylum bear the burden of proving by a preponderance of the evidence that they qualify as refugees

according to this definition. 8 C.F.R. § 208.13(a) (2005). However, an applicant who is determined to have suffered past persecution is presumed to have a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1); *see also Angoucheva*, 106 F.3d at 788 ("If the alien establishes past persecution, moreover, a rebuttable presumption arises in favor of granting asylum."). To rebut this presumption, the Agency must prove by a preponderance of the evidence either that there has been such a "fundamental change in circumstances" in the applicant's country that the applicant's fear of persecution is no longer well-founded, *id.*, or that the applicant "could avoid future persecution by relocating to another part of the applicant's country." 8 C.F.R. § 208.13(b)(1)(i)(B) (2005); *Bace v. Ashcroft*, 352 F.3d 1133, 1140 (7th Cir. 2003).

Ms. Sosnovskaia bases her claim for asylum on her averred fear of persecution on account of her religion. In its review of the IJ's first ruling, the BIA ruled that Ms. Sosnovskaia had indeed been persecuted in the past, and the Agency did not appeal that finding of fact. Thus, Ms. Sosnovskaia qualifies as a refugee unless the situation in Ukraine has changed fundamentally or there exists safe regions within Ukraine to which she can relocate.

The IJ determined that both of these conditions were satisfied. However, on the record before us, we find that the IJ did *not* follow proper procedure, and as such, leads us to the conclusion that the IJ did not thoroughly consider all of the issues raised before her in this matter. *See Mansour*, 230 F.3d at 908. The IJ's ruling made no reference to Ms. Sosnovskaia's evidence regarding current anti-Semitism in Ukraine. Specifically, the IJ's ruling did not address the letter that Ms. Sosnovskaia presented from her mother. The letter stated that the mother had been harassed because of her religion. The letter further expressed that in the mother's opinion, Ms. Sosnovskaia still has much to fear if she returns to Ukraine. The IJ also did not address the

various newspaper articles and compilations from the Union of Council for Soviet Jews which indicates recent anti-Semitic activity in Ukraine. The IJ also did not address any evidence Ms. Sosnovskaia presented that indicated that her request to move to Kiev was rejected by the Ukrainian government, thereby indicating the continued existence of a *propiska* system in Ukraine. Indeed, the IJ cites nonexistent testimony from Ms. Sosnovskaia, in which she supposedly denied having attempted to relocate within Ukraine. The record contains no such testimony. In addition, the IJ appears to have treated the Country Report as dispositive, contrary to our admonitions in cases such as *Diallo v. Ashcroft*, 381 F.3d 687 (7th Cir. 2004), regarding the potential for bias in such reports and "the inability of asylum-seekers to question the conclusions contained therein." *Diallo*, 381 F.3d at 700; *see also Zheng*, 409 F.3d at 811; *Niam v. Ashcroft*, 354 F.3d 652, 658 (7th Cir. 2004); *Galina v. INS*, 215 F.3d 955, 958-59 (7th Cir. 2000). Most egregiously, the IJ issued her final ruling before permitting Ms. Sosnovskaia to give evidence at the hearing scheduled for October 16, 2001.

The procedure that the IJ employed in this case is an affront to Ms. Sosnovskaia's right to be heard. Regardless of the strength of her case on the merits, fundamental tenets of proper administrative procedure demand that before Ms. Sosnovskaia be deported, she should be granted a fair hearing in which the judge gives due consideration to her arguments. As she has not received a fair hearing and the findings are overreaching and not supported by the evidence in the record, we must vacate the IJ's ruling and remand for further proceedings. *Cf. Mansour*, 230 F.3d at 908 (vacating because the BIA's mislabeling of an applicant's ethnic and religious affiliation called into question the logic of the ruling); *Chitay-Pirir v. INS*, 169 F.3d 1079, 1081 (7th Cir. 1999) (vacating because it was "impossible to be confident that

Chitay-Pirir's claim has been fully understood or analyzed"); *Hengan v. INS*, 79 F.3d 60, 63-64 (7th Cir. 1996) (vacating, despite the presence of evidence in favor of the Agency that would "[o]rdinarily . . . lead[ ] a reviewing court to affirm," on the grounds that the IJ took into account irrelevant facts and did not properly consider the applicant's arguments).

On remand, the IJ must again consider the two questions asked by the BIA in its opinion following Ms. Sosnovskaia's first appeal: first, whether circumstances in Ukraine have changed sufficiently that Ms. Sosnovskaia's fear of persecution is no longer well-founded; and second, whether Ms. Sosnovskaia can return to Ukraine and yet avoid anti-Semitism by relocating to a different region of the country. Unless the Agency proves that one of these conditions is satisfied, Ms. Sosnovskaia will qualify as a refugee based on the presumption arising from the BIA's findings of fact. As the procedural defects here cast doubt on the current IJ's ruling in its entirety, the IJ who receives this case on remand may properly consider all of Ms. Sosnovskaia's requested forms of relief, including not only asylum but also withholding of removal and relief pursuant to the Convention Against Torture.

## III.  CONCLUSION

For the reasons stated above, we GRANT the petition for review and REMAND for further proceedings consistent with this opinion. Furthermore, we note that the same IJ has twice found Ms. Sosnovskaia deportable, only to have one of her rulings reversed and the other vacated. While the final choice of a presiding judge remains always with the BIA, we strongly encourage the BIA to assign Ms. Sosnovskaia's case to a different judge on remand in order to avoid any perception of lingering bias. *See Georgis v. Ashcroft*, 328 F.3d 962, 970 (7th Cir. 2003) (citing Circuit Rule 36 of the

United States Court of Appeals for the Seventh Circuit, which establishes the same default rule for cases remanded to federal district courts).

A true Copy:

       Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*