In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 05-1882

QUESTOR CECAJ and BLERTA CECAJ,

*Petitioners*,

*v.*

ALBERTO R. GONZALES,

*Respondent*.

———————

Petitions to Review Orders of the
Board of Immigration Appeals.
Nos. A95-207-964, A95-207-908.

———————

ARGUED FEBRUARY 15, 2006—DECIDED MARCH 15, 2006

———————

Before POSNER, ROVNER, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*.  Questor Cecaj, who together with his wife is seeking asylum in the United States, was active in the Democratic Party of Albania at a time when the country was ruled by the Socialist Party. Persecution of Democratic Party activists during this period has been found in a number of cases. E.g., *Gjerazi v. Gonzales*, 435 F.3d 800 (7th Cir. 2006); *Bace v. Ashcroft*, 352 F.3d 1133 (7th Cir. 2003); *Caushi v. Attorney General*, 436 F.3d 220 (3d Cir. 2006); *Halo v. Gonzales*, 419 F.3d 15, 17 (1st Cir. 2005). In 1998, Cecaj—whom the immigration judge found wholly

credible—was arrested following a political protest in which he had participated. He was detained for six days and during that period was beaten by masked police with rubber truncheons and also kicked, suffering injuries that required his hospitalization. A few days after his release from the hospital a member of the Socialist Party accosted Cecaj on the street and fired a gun near his head, an act that Cecaj sensibly interpreted as a threat. He fled to Greece but returned in 2000 and resumed his political activity with the New Democratic Party, which is related to the Democratic Party, though the precise relationship is obscure. The following year, after an unsuccessful run for mayor of his hometown, he stood for the Albanian parliament on the New Democratic Party ticket in his hometown, which was dominated by the Socialist Party. Although he was a well-known local figure and candidate for public office, he was arrested during the campaign and beaten by the police, ostensibly for not having identification papers on him. He also received threatening phone calls, which he believed came from the police. The last straw was the kidnapping of his 10-year-old brother by unknown persons who told the child that he was being kidnapped because of Cecaj's political activity and that the child "would end up dead" if Cecaj "didn't do what they say." The child was released unharmed after a few hours but Cecaj received a call in which "they said that [the kidnapping] was the last warning." Cecaj prudently abandoned his candidacy and left Albania with his wife.

The immigration judge ruled that Cecaj's testimony did not establish that he had been persecuted. The judge said that the initial detention, despite the beatings and kicking to which Cecaj was subjected during it, was merely harassment that, "by itself, does not rise to the level of persecution." As for the gun incident, that was not perse-

cution either, the judge said, because Cecaj "failed to establish [either] that the government was unable or unwilling to control the socialist supporter" or "that the socialist fired the gun close to him on account of his political opinion." The threatening phone calls didn't count because Cecaj "failed to identify what individual or group made the phone calls . . . . He opined that the police made the threatening phone calls, however he also stated that the callers never identified themselves." The judge noted that Cecaj had "submitted a police certificate stating that [his] father reported an anonymous phone call . . . to the police. The existence of the police certificates indicates that the government was able and willing to file a written report. As such, [Cecaj] is unable to link the anonymous phone calls to the government or to a group that the government is unable or unwilling to control" (record reference omitted). As for the kidnapping, Cecaj "failed to identify the perpetrators . . . . The perpetrators of the kidnaping [sic] were unknown. As such the incident does not constitute past persecution." The judge also discounted the second detention on the ground that the reason the police beat Cecaj was that he was not carrying identification papers; it is not persecution to beat someone for such a reason.

The immigration judge's analysis of the evidence was radically deficient. He failed to consider the evidence as a whole, as he was required to do by the elementary principles of administrative law. *Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000); *Koval v. Gonzales*, 418 F.3d 798, 806 (7th Cir. 2005); *Zhang v. Gonzales*, 408 F.3d 1239, 1249 (9th Cir. 2005). Instead he broke it into fragments. Suppose you saw someone holding a jar, and you said, "That's a nice jar," and he smashed it to smithereens and said, "No, it's not a jar." That is what the immigration judge did.

He said that the initial detention and beatings were not persecution "by itself," but merely harassment. That seems a questionable characterization of protracted beatings and kicking serious enough to require hospitalization. But that is a side issue. The question the immigration judge should have considered was not the significance of the episode in itself but whether the entire sequence of experiences that Cecaj underwent as a consequence of his political activity made him a victim of persecution. That sequence included two detentions with beatings, a gunshot intended to intimidate, threatening phone calls, the kidnapping of a child, and another threat.

The government's lawyer conceded at argument that the judge was wrong to say that Cecaj had not shown that the "socialist" had fired the gun on account of Cecaj's political activities. The timing alone was pregnant: the incident occurred shortly after Cecaj had been released from jail. People do not go around shooting guns *because* they are socialists or communists. But members of the Albanian Socialist Party—a rough crowd, e.g., *Gjerazi v. Gonzales*, *supra*, 435 F.3d at 802-04; *Comollari v. Ashcroft*, 378 F.3d 694, 696 (7th Cir. 2004); *Bace v. Ashcroft*, *supra*, 352 F.3d at 1136; *Caushi v. Attorney General*, *supra*, 436 F.3d at 226-27; *Latifi v. Gonzales*, 430 F.3d 103, 105 (2d Cir. 2005)—may well have been shooting guns to intimidate (sometimes to kill, *Caushi v. Attorney General*, *supra*, 436 F.3d at 226; *Halo v. Gonzales*, *supra*, 419 F.3d at 18) their political opponents.

There was, it is true, no direct evidence that the "socialist" was in cahoots with the government. But remember that Cecaj had just been released from the hospital after being beaten by the police; is it credible that the "socialist" was courting arrest by his conduct? As for the mysterious "police certificate," described by the immigration judge as a

written report filed by the government, we are not told what action if any was taken on it. For all that appears, Cecaj's father complained to the police about an anonymous phone call and the police wrote down his complaint and gave him a copy of it. There is no indication of any follow-up (likewise with the kidnapping, which was also reported to the police). And the fact that Cecaj could not identify the callers did not preclude his inferring that they were police. They might have identified themselves as police without giving their names or might have said things that revealed that they were police.

The second detention was ostensibly for Cecaj's failure to have identification papers with him. But he was not merely detained; he was beaten. Do Albanian police routinely beat people who fail to carry identification? Maybe so, but taken together with the other evidence in the case the beating was further evidence of persecution.

And finally the kidnapping. There is no evidence that the kidnappers were police. But given the attitude of the police as manifested by their previous conduct toward Cecaj, he would have been reckless to ignore the threat and trust the police to protect his brother and him.

Thus, the immigration judge's finding that Cecaj was not a victim of persecution on account of his political activity is not supported by substantial evidence. Even so, he is not entitled to asylum unless he has a well-founded fear of being persecuted should he be returned to Albania. Political conditions have changed in that country since he left in 2001—the Democratic Party (not the New Democratic Party, however) gained control of the government last year, U.S. Dep't of State, Bureau of European and Eurasian Affairs, "Background Note: Albania" 3 (Sept. 2005), http://www.state.gov/r/pa/ei/ bgn/3235.htm. Maybe

Cecaj will be safe if he returns and resumes his political career. But once past persecution is shown, the burden shifts to the government to establish that the alien lacks a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1); *Sosnovskaia v. Gonzales*, 421 F.3d 589, 593 (7th Cir. 2005). The immigration judge did not find that the government had carried that burden. What he said was that Cecaj had failed to establish that he would be persecuted if he was sent back to Albania. The judge placed the burden on the wrong party.

The petitions for review are granted, the orders of removal vacated, and the case returned to the Board of Immigration Appeals for further proceedings consistent with this opinion.

A true Copy:

        Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*