# In the
# United States Court of Appeals
## For the Seventh Circuit

————————

No. 04-3218

ROMAN SOKOLOV,

*Petitioner,*

*v.*

ALBERTO R. GONZALES, Attorney General
of the United States,

*Respondent.*

————————

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A78-643-107

————————

ARGUED SEPTEMBER 9, 2005—DECIDED MARCH 24, 2006

————————

Before BAUER, POSNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Roman Sokolov filed an asylum application claiming that he was persecuted in Russia because he is a practicing Baptist. The Immigration Judge (IJ) denied the application, finding that Sokolov had failed to meet his burden of showing past persecution and had filed his claim too late. While his appeal to the Board of Immigration Appeals (BIA) was pending, Sokolov married a U.S. citizen. The BIA thus remanded the case to the IJ to consider whether Sokolov could adjust his status based on the marriage. The IJ thought not, exercising his discretion

to deny Sokolov's application primarily because of his implausible explanation of a recent conviction for financial identity theft. The BIA affirmed the denial of both claims. We conclude that we lack jurisdiction over Sokolov's claims and therefore dismiss his petition for review.

## I

Sokolov arrived in the United States on September 4, 1998, on a non-immigrant tourist visa. After obtaining an extension of this visa, he was authorized to remain in the United States until March 8, 2000. Sokolov waited to file his asylum application until July 20, 2000. After this application was filed, the then-Immigration and Naturalization Service issued Sokolov a Notice to Appear, seeking to remove him from the United States for overstaying his visa.

At his asylum hearing, Sokolov testified that he became a practicing Baptist in 1993 and, as a result, was fired by his employer and beaten and harassed by members of a Russian nationalist political party. This was the only direct evidence in the record supporting his claim, despite the fact that his wife and many of his former co-parishioners, who might have corroborated it, remained in Russia. Sokolov claimed that the reason he filed his application after the applicable one-year deadline was because of injuries he sustained in a June 1999 car accident. In response to questioning by the IJ, however, he acknowledged that he was able to walk with crutches within weeks of the accident and did not consider filing for asylum until several months later, following a telephone conversation with his wife in Russia.

The IJ denied Sokolov's asylum application, explaining that while "the harassment and treatment the respondent endured in Russia apparently because of his religious beliefs is reprehensible and unfair," it did not meet the standard of past persecution and that neither Sokolov's

testimony nor the State Department Country Report on Russia "establish[es] a reasonable probability of future persecution based upon [his] Baptist faith." The IJ also concluded that Sokolov failed to meet the one-year filing requirement for asylum applications and did not qualify under any of the exceptions to the timely filing rule, since "it's clear from the respondent's testimony that it was not the car accident that caused the delay in filing."

Sokolov appealed to the BIA. While the appeal was pending, Sokolov married Sylvia Ankova, a U.S. citizen, and filed a motion with the BIA to remand his case so that he could apply for adjustment of status based on the marriage. (We assume, although the record is silent on this point, that Sokolov and his wife in Russia had divorced between the two hearings.) Noting that "the respondent now appears *prima facie* eligible to adjust his status, in view of his marriage to a United States citizen," the BIA returned the case to the IJ.

At the adjustment of status hearing, it came to light that Sokolov recently had been convicted in Illinois state court of financial identity theft, a misdemeanor, for having obtained a state identification card in the name of his wife's ex-husband. When asked about this incident, Sokolov explained that he had found an expired identification card in the taxicab he was driving and, at the urging of his co-workers and as a "bad joke," had a new card made with his own picture. Sokolov claimed that until he showed the new card to Ankova, he was not aware that the expired card had belonged to her ex-husband. In response to the IJ's inquiry regarding how the expired card had wound up in his cab in the first place, Sokolov suggested that his wife must accidentally have dropped it there. Ankova later testified, however, that she had no knowledge of having ever possessed her ex-husband's identification card.

The IJ found Sokolov's explanation "incredible," noting that Ankova's testimony that she had no knowledge of

having possessed the card "suggests that the respondent was not telling the truth." The IJ commented that "[t]he circumstances and underlying facts of the respondent's act suggest that he and his wife were aware that he had been ordered to leave the United States and 'concocted' an idea for the respondent to assume a new identity." Based on Sokolov's "less than candid testimony and implausible explanation for his conduct," the IJ concluded that he did not merit a favorable exercise of discretion to allow him to adjust his status.

Sokolov appealed the IJ's decision, which the BIA adopted and affirmed. The Board explained that the IJ "correctly held that the respondent's asylum application must be barred because he failed to file it within one year of his arrival in the United States, and that the respondent failed to qualify for an exception to the one year bar, since he failed to timely file for asylum after his non-immigrant status expired." In addition, the BIA held that "based on the evidence of record and the respondent's testimony," the IJ "correctly denied the respondent's application for adjustment of status in the exercise of discretion."

## II

In his petition for review, Sokolov contends that the BIA's decision denying him asylum is not based on substantial evidence and that the BIA abused its discretion in denying his adjustment of status application based on the identity theft conviction. The government contends that we lack jurisdiction over both claims, arguing that 8 U.S.C. § 1158 bars judicial review of a BIA decision finding an asylum application untimely, and 8 U.S.C. § 1252 bars our review of a discretionary denial of an adjustment of status application.

In general, an alien must file an asylum application within one year of her arrival in the United States. 8 U.S.C.

§ 1158(a)(2)(B). Notwithstanding this deadline, an application may be deemed timely "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the [required] period." 8 U.S.C. § 1158(a)(2)(D). The statute is clear, however, that these decisions are exclusively the Attorney General's to make; it specifically says that "[n]o court shall have jurisdiction to review any determination of the Attorney General" under these provisions. 8 U.S.C. § 1158(a)(3). Thus, if the BIA's denial of an asylum application rests on timeliness grounds, we lack jurisdiction. See *Vasile v. Gonzales*, 417 F.3d 766, 768 (7th Cir. 2005) ("[T]his jurisdictional bar [referring to § 1158(a)(3)], even as qualified by the REAL ID Act, prevents us from reviewing the BIA's factual determination about when [a petitioner] filed his asylum claim.").

It is undisputed that Sokolov filed his asylum application more than a year after entering the United States. Although at his immigration hearing Sokolov contended that injuries sustained in a car accident should excuse his late filing, the IJ understandably rejected this argument based on Sokolov's own testimony that he did not even begin to contemplate applying for asylum until months after the accident. The BIA affirmed the IJ's asylum decision solely on this timeliness ground. We therefore lack jurisdiction over Sokolov's challenge to the denial of his asylum application.

We turn next to Sokolov's adjustment of status claim. Here too, Congress has given the Attorney General a large measure of unreviewable discretion. The statute permits him to adjust an alien's status, "in his discretion and under such regulations as he may prescribe," if the alien meets specified criteria. 8 U.S.C. § 1255(a). A door-closing statute precludes judicial review of "any judgment regarding the

granting of relief under section . . . 1255," 8 U.S.C. § 1252(a)(2)(B)(i), language we have interpreted as "preclud[ing] our review of discretionary decisions to deny relief under § 1255." *Boykov v. Ashcroft*, 383 F.3d 526, 531 (7th Cir. 2004); see also *Vasile*, 417 F.3d at 768 (notwithstanding changes wrought by the REAL ID Act, "discretionary or factual determinations continue to fall outside the jurisdiction of the court of appeals entertaining a petition for review"). At the same time, we have held that the door-closing statute remains "inapplicable to orders that violate the Constitution," *Subhan v. Ashcroft*, 383 F.3d 591, 595 (7th Cir. 2004), a point the government conceded at argument and that is reinforced by the REAL ID Act's amendment of § 1252, which specifically permits judicial review of "constitutional claims or questions of law." REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 310-11 (2005), amending 8 U.S.C. § 1252(a)(2). This, of course, does not mean that we will "emasculate the door-closing statute by equating arbitrary rulings to denials of due process," *Subhan*, 383 F.3d at 595-96; only egregious administrative irregularities may amount to constitutional violations.

There were no such problems in this case. The IJ exercised his discretion to deny Sokolov's application for adjustment of status primarily on the basis of his conviction and his incredible explanation of the circumstances surrounding it. As the IJ explained to Sokolov in rendering his decision: "Your lack of honesty in court affects your eligibility for permanent residence in the exercise of discretion. So while the crime itself does not make you ineligible I'm going to deny your application based on discretion." In affirming the decision, the BIA explicitly approved this exercise of discretion. These actions fall squarely within the ambit of § 1252, and we thus lack jurisdiction to review Sokolov's challenge to the denial of his application for adjustment of status.

### III

Accordingly, the petition for review is DISMISSED for want of jurisdiction.

A true Copy:

Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*