In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-1468

GENTI BALLIU,

*Petitioner,*

*v.*

ALBERTO R. GONZALES,

*Respondent.*

On Petition for Review of an Order of
the Board of Immigration Appeals.
No. A77-838-565

ARGUED JANUARY 5, 2006—DECIDED OCTOBER 27, 2006

Before FLAUM, *Chief Judge*, and ROVNER and WILLIAMS,
*Circuit Judges*.

ROVNER, *Circuit Judge.* Asylum applicant Genti Balliu
fled Kosovo claiming that Serbian officials persecuted him
in retaliation for his participation in a pro-Albanian
political organization. Because we find that the immigration
judge misallocated the burden of demonstrating a well-
founded fear of future persecution, we remand to the Board
of Immigration Appeals (BIA) to apply the correct presump-
tion.

Balliu is a native and citizen of Kosovo, a province of the
Republic of Serbia under civil and military administra-
tion by the United Nations. Born in 1975, Balliu, at the age

of nineteen, joined the Democratic Alliance of Kosovo ("LDK"), an organization that, according to Balliu, seeks to preserve Albanian culture and foster Kosovo's transition to independence. As a member of the youth group division of LDK, Balliu regularly distributed leaflets, organized meetings, attended demonstrations, and talked to other young people about the Serb occupation and what they could do to prevent Serb authorities from persecuting Albanians.

Balliu testified that on January 22, 1995, as he was walking home, three Serbian policemen stopped him to conduct a weapons search. Balliu told the policemen that he did not have or own any weapons, but that he had some LDK leaflets as well as an Albanian book. The policemen asked to whom the leaflets and book belonged, and Balliu replied that they were his. In response, one of the policemen kicked Balliu and another punched him and hit him with a rubber-coated metal baton.

Balliu was no stranger to these sorts of attacks. He testified that in 1981, Serbian police beat his father, and imprisoned him for a week after he was arrested at a demonstration for Albanian rights. This event, however, merely fueled Balliu's desire to become involved in the ethnic Albanian movement in Kosovo.

In November 1998, Balliu worked with others to publicize and organize a large demonstration to commemorate Albanian flag day. During the demonstration, the Serbian police began yelling at demonstrators and pushing and kicking people to disperse the crowd. According to Balliu, the officers hit Balliu's friend on the head with a rifle butt and when Balliu went to his aid, the police hit him as well and he lost consciousness. Balliu awoke in a hospital bed and stayed for three days due to difficulty breathing and moving his arms. It took Balliu weeks to recover and at his hearing he testified that he still suffered from sporadic chest and back pain.

The final episode Balliu recounted began on January 17, 1999, when Balliu and his friends were organizing another youth meeting. They had just delivered a large amount of anti-Serb literature when they were stopped by police for a weapons check. The Serb police found anti-Serb material in the trunk of the car and issued each of the youths an arrest warrant requiring them to appear at the police headquarters in Peja the following day. Balliu had heard of Serbian authorities detaining ethnic Albanians for weeks or months for minor offenses, so after a discussion with his family, he borrowed money from an uncle and left Kosovo, eventually entering the United States in Laredo, Texas, in May 1999. Balliu applied for political asylum on December 13, 1999.

When the government initiated removal proceedings, Balliu's application for asylum automatically became a request for withholding of removal under § 241 of the Immigration and Nationality Act (INA), § 8 U.S.C. § 1231(b)(3), and a request for deferral of removal under Article 3 of the United Nation's Convention Against Torture. 8 C.F.R. § 208.3(b). Balliu also requested voluntary departure. On August 8, 2002, the immigration judge held removal proceedings and, in an order dated August 8, 2002, denied his application for asylum, for withholding of removal, and for protection under the Convention Against Torture; found that he was not eligible for voluntary departure; and ordered removal. (R. at 34). The BIA summarily affirmed without opinion on February 4, 2004. (R. at 2).

Because the BIA summarily affirmed without opinion, we review the decision of the immigration judge. *Hanaj v. Gonzales*, 446 F.3d 694, 699 (7th Cir. 2006). We must affirm the immigration judge's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole, and overturn it only if the record compels a contrary result. *INS v. Elias-Zacarias*, 502

U.S. 478, 481, 112 S. Ct. 812, 815 (1992); *Jun Ying Wang v. Gonzales*, 445 F.3d 993, 997 (7th Cir. 2006). We review the BIA's legal conclusions, including whether it has properly allocated burdens, de novo. *Capric v. Ashcroft*, 355 F.3d 1075, 1086 (7th Cir. 2004) (the BIA's legal conclusions are reviewed de novo); *Chicago Prime Packers, Inc. v. Northam Food Trading Co.*, 408 F.3d 894, 898 (7th Cir. 2005) (noting that the distribution of burdens is a question of law which a court of appeals reviews de novo.)

To qualify for asylum, Balliu must show that he is a refugee within the meaning of the INA by proving that he was persecuted in the past on the basis of his race, religion, nationality, membership in a social group, or political opinion, or alternatively, by proving that he has a well-founded fear of future persecution for the same reasons. *See* 8 U.S.C. § 1158(b)(1)(B)(i); 8 U.S.C. § 1101(a)(42)(A); *Bace v. Ashcroft*, 352 F.3d 1133, 1137 (7th Cir. 2003). The immigration judge fully credited Balliu's testimony and concluded that Balliu had established that he had been persecuted in the past. (R. at 27-28).

Generally however, past persecution alone will not suffice for a grant of asylum. A refugee can qualify for asylum based on past persecution alone if she "demonstrated compelling reasons for being unwilling to return to the country arising out of the severity of the past persecution." 8 C.F.R. § 208.13(b)(1)(iii)(A); *see also Bucur v. I.N.S.*, 109 F.3d 399, 404-05 (7th Cir. 1997). In other words, "if an applicant is not in danger of being persecuted if he is deported, he will not be granted asylum unless the persecution from which he fled was especially heinous." *Bucur*, 109 F.3d at 404-05. The immigration judge concluded that Balliu's past persecution was not "so severe that it would be inhumane to return the alien to his native country even in the absence of any risk of future persecution." (R. at 29) (citing *Dobroto v. INS*, 195 F.3d 970, 974 (7th Cir. 1999)). Once an asylum applicant demonstrates that he has been

persecuted in the past, however, the court must presume that he has a well-founded fear of future persecution, and the burden shifts to the government to establish by a preponderance of the evidence that the conditions in the petitioner's homeland have improved such that persecution of the petitioner is unlikely to recur. *Cecaj v. Gonzales*, 440 F.3d 897, 900 (7th Cir. 2006); 8 C.F.R. § 208.13(b)(1).

Despite the fact that the government bears this burden, the immigration judge turned to Balliu "to support the fact that he would face future persecution" in Kosovo. (R. at 32). Specifically, he stated,

> The respondent . . . has not been able to produce other documentation which would support the fact that he would face future persecution. The Board in re *Y-B-*, 21 I & N Dec. 1136 (BIA 1998), stated that an asylum applicant does not meet his burden of proof by general and meager testimony. Given the weakness of the applicant's testimony with respect to current conditions in Kosovo, it is the assessment of the Board that the respondent would need corroborative evidence to support his claim.

*Id*. In short, the immigration judge looked to Balliu's testimony; he looked to Balliu's corroborative evidence or lack thereof; and he looked at the documentary evidence— newspaper articles, country reports, Amnesty International reports, etc. all of which were introduced by Balliu,[1] and

---

[1] We do not mean to imply that the agency (formerly the Immigration and Naturalization Service, currently the Department of Homeland Security) cannot rely on exhibits submitted by an applicant for asylum. Balliu submitted hundreds of pages of exhibits regarding the conditions in Kosovo and the government need not submit duplicative or superfluous exhibits merely to carry its burden. Indeed, in this case the agency properly used

(continued...)

concluded that Balliu had not presented sufficient evidence to support his claim that he feared future persecution if returned to Kosovo. It was not Balliu's burden, however, to establish that the conditions in Kosovo continued to present a threat to him. Once Balliu established that he had been persecuted in Kosovo, the government had the burden to establish, by a preponderance of the evidence, that the conditions had improved sufficiently. *Cecaj*, 440 F.3d at 900.

It is true that, in the initial pages of the opinion in which the immigration judge recites the various standards and requirements of proof in asylum law, he sets forth the appropriate burden shifting-standard, stating: "[s]atisfactory proof of past persecution will give rise to a presumption that the petitioner also has a well-founded fear of future persecution. However, that presumption is rebuttable." (R. at 22) (internal citations omitted). Nevertheless, we must evaluate not what an immigration judge says that he ought to do at the outset of the opinion, but what it is that he actually does when applying the standard to the particular facts of the case. And despite the boilerplate display of the appropriate standard, the immigration judge placed the burden on Balliu and not the government when considering the current conditions in Kosovo. The judge put the full weight of the burden on Balliu, penalizing him for "not sufficiently augment[ing] his claim" to support his allegation that he would face future persecution. *Id.* at 33.

The government's brief states that "[b]ecause the Immigration Judge found Petitioner's testimony credible regard-

---

[1] (...continued)
Balliu's documentary exhibits to cross-examine him about current conditions in Kosovo. We simply note that the immigration judge pointed to these exhibits as insufficient to support Balliu's claim that the conditions in Kosovo had not changed substantially enough to allay his fears of future persecution, and as we explain, this allocation of the burden was incorrect.

ing the prior acts of abuse by Serbian authorities and his membership in the LDK, he concluded that Petition [sic] had established past persecution and therefore enjoyed the presumption of a well-founded fear of future persecution. A.R. at 28." (Respondent's brief at 13). The immigration judge, on page twenty-eight of the record, does indeed conclude that Balliu has established past persecution, but nowhere on that page or on any other page of the opinion (other than in the boilerplate language described above) does the judge mention the proper presumption or the government's burden. To the contrary, the immigration judge repeatedly refers to the shortcomings of Balliu's proof without once referring to evidence submitted by or lacking from the government. The judge made a legal error by placing the burden on the wrong party. The case must be remanded to rectify this error.

On remand, the BIA may consider the most recent version of the State Department's Country Reports and other current evidence to make an individualized determination as to whether Balliu's particular fear of future persecution should be allayed by improvements in the political conditions in Kosovo. *See, e.g.*, *INS v. Ventura,* 537 U.S. 12, 18, 123 S. Ct. 353, 356 (2002) (noting that "remand could lead to the presentation of further evidence of current circumstances" in the applicant's country of origin); *Giday v. Gonzales*, 434 F.3d 543, 556 (7th Cir. 2006); *Bace*, 352 F.3d at 1141-42. Because Balliu's brief on appeal does not set forth any arguments in support of his claims for withholding of removal and relief under the Convention Against Torture, these claims are waived. *See Huang v. Gonzales*, 403 F.3d 945, 951 (7th Cir. 2005).

The petition for review is granted, the order of removal vacated, and the case returned to the Board of Immigration Appeals for further proceedings consistent with this opinion. Each party to bear its own costs.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*