NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 29, 2013
Decided May 3, 2013

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 12-2187

| | |
|---|---|
| DHIONIS ZHIDRO, et al., | Petition for Review of an Order of the |
| *Petitioner*s, | Board of Immigration Appeals. |
| | |
| *v.* | Nos. A089 661 709, A089 661 710 & |
| | A089 661 711 |
| ERIC H. HOLDER, JR., | |
| Attorney General of the United States, | |
| *Respondent*. | |

**ORDER**

Dhionis Zhidro and his family overstayed their visas and are removable from the United States. Zhidro fears persecution in his native Albania because of his Vlach ethnicity and his support for Omonia, an organization that advocates for minority Greeks in Albania. Zhidro challenges the Board of Immigration Appeals' denial of his application for withholding of removal. His wife and daughter, both Greek citizens, have derivative petitions for review. Zhidro's testimony that he was beaten on one occasion by opponents of Omonia and treated poorly in school and later in the Albanian military did not compel a finding that he is entitled to withholding of removal. We deny the petition.

The Albanian government describes Vlachs as an ethnolinguistic minority. Zhidro is a Vlach (also spelled "Vllach" and "Vllah" in the administrative record) who lived and traveled between Greece and Albania for more than a decade before he arrived in the United States with his wife and young daughter as visitors in early 2005. At that time the family had been living in Greece continuously for more than four years.  During those years Zhidro had returned to Albania only once for a few days while renewing his Albanian passport.

Zhidro and his family extended their visas through May 2006 but did not depart when those visas finally expired. In February 2008 he (and, derivatively, his wife and non-citizen daughter) applied for asylum, claiming past persecution in Albania. By regulation, Zhidro's application for asylum also included automatic requests for withholding of removal and protection under the Convention Against Torture. See 8 C.F.R. §§ 208.3(b), 208.16; *Balliu v. Gonzales*, 467 F.3d 609, 611 (7th Cir. 2006). He based his application on membership in a social group (the Vlachs) and political opinion (support for Omonia). The Department of Homeland Security referred the application to Immigration Court and initiated removal proceedings against the family for overstaying their visas.

At a hearing before an immigration judge, Zhidro testified that some Vlachs in Albania face harassment. During Communist rule, he explained, his grandfather had been sentenced to five years in prison (apparently in 1987) for criticizing the quality of locally available bread and for listening to a Greek radio station. When Zhidro was in school (which was before he first left for Greece in 1991 at age 16) he and his siblings were seated apart from the rest of the class and were neglected by teachers. His family did not have sufficient food or clothing. When Zhidro returned to Albania in 1994 and signed up for compulsory military service (which he learned was a precondition for getting the passport he wanted), he was assigned cleaning and cooking tasks more frequently than ethnic Albanians.

Zhidro also testified that during a brief return to Albania in 2000, he had donated a small amount of money to Omonia and canvassed for that organization, which, he said, seeks to advance Vlach as well as ethnic Greek interests in Albania. After an election, members of a rival party punched and kicked him, and an Albanian police officer refused to record his complaint about the incident. A week after the beating, Zhidro left Albania again for Greece.

The immigration judge rejected Zhidro's claim that debilitating panic attacks had prevented him from filing his asylum application within a year of arriving in the United States, as is ordinarily required.  See *Sokolov v. Gonzales*, 442 F.3d 566, 569 (7th Cir. 2006); *Vasile v. Gonzales*, 417 F.3d 766, 768-69 (7th Cir. 2005). Zhidro does not challenge that ruling.

The immigration judge also denied withholding of removal and CAT relief. The judge found Zhidro's testimony credible but concluded that Vlachs are "well-integrated into society" and protected by Albanian law. The judge found that Zhidro's grandfather's harsh sentence had little probative value because it had been imposed by a Communist regime that no longer exists. Finally, in the judge's view, Zhidro's repeated sojourns to Greece and voluntary returns to Albania suggested that he did not fear living in his home country.

The Board of Immigration Appeals upheld the immigration judge's decision. Although the Board criticized the judge for not discussing at greater length whether Zhidro had established past persecution or at least a pattern or practice of persecuting all Vlachs, the Board itself concluded that evidence did not support finding either possibility. Indeed, the Board noted, Zhidro had failed even to challenge the judge's conclusion that he did not suffer past persecution. The Board also echoed the immigration judge in noting Zhidro's unhindered travel in and out of Albania and the apparent integration of the Vlach community into Albanian society.

In this court Zhidro challenges the denial of withholding of removal. (He also insists that he should have been granted CAT relief, but his failure to advance relevant factual or legal arguments at any stage of the administrative proceedings means that we cannot consider that claim.) To be eligible for withholding of removal, Zhidro needed to show that his "life or freedom would be threatened" in Albania because of his membership in a particular social group or his political opinion. See 8 U.S.C. § 1231(b)(3)(A). Where, as here, the Board adopts but supplements the immigration judge's reasoning, we review both decisions, *Jonaitiene v. Holder*, 660 F.3d 267, 270 (7th Cir. 2011), and will uphold the Board's final decision unless the record "compels a different result." *Liu v. Holder*, 692 F.3d 848, 852 (7th Cir. 2012); *Abraham v. Holder*, 647 F.3d 626, 632 (7th Cir. 2011).

The government does not address whether Vlachs are a social group or whether support for Omonia constitutes a political opinion. Instead, the government defends the denial of withholding on grounds that Zhidro simply did not establish past persecution or a well-founded fear of future persecution.

The government contends that past persecution is no longer an issue, not only because, as the Board observed, Zhidro did not challenge the immigration judge's finding on that subject in his administrative appeal, but also because in this court Zhidro does not contest the Board's conclusion that he abandoned the issue. Zhidro has not filed a reply brief disputing the government's view. His brief to the Board used the term "past persecution" twice but did not assert any flaw in the immigration judge's analysis of the subject. Zhidro thus failed to preserve the issue for judicial review. See *Ishitiaq v. Holder*, 578 F.3d 712, 717 (7th Cir. 2009); *Toptchev v. INS*, 295 F.3d 714, 721 (7th Cir. 2002). In any event

Zhidro's testimony that he was assaulted once by opponents of Omonia and treated poorly as a schoolboy and again years later as an army recruit might suggest discrimination but did not compel a finding that he experienced threats to life or freedom that would support withholding of removal. See *Stanojkova v. Holder*, 645 F.3d 943, 947–48 (7th Cir. 2011) (distinguishing between unequal treatment constituting discrimination and significant physical harm typical of persecution).

As for Zhidro's asserted fear of future persecution, the fact that the Albanian government issued and renewed his passport and never stopped him from leaving the country undermines his claim, as do his voluntary returns to Albania. See *Toptchev*, 295 F.3d at 722; *Dobrota v. INS*, 195 F.3d 970, 974 (7th Cir. 1999). And though imprisonment for an offense as mundane as listening to foreign radio broadcasts was not unheard of under the repressive Communist regime that punished Zhidro's grandfather, that regime no longer controls Albania. See *Tamas-Mercea v. Reno*, 222 F.3d 417, 425 (7th Cir. 2000) (discounting suffering of applicant's family members at hands of since-ousted Communist government); *Bollanos v. Gonzales*, 461 F.3d 82, 83, 86 (1st Cir. 2006) (same); *Mullai v. Ashcroft*, 385 F.3d 635, 637, 639 (6th Cir. 2004) (same). In fact, nothing in Zhidro's testimony connects his grandfather's experience to his ethnicity.

Further, Zhidro did not establish entitlement to withholding of removal on a theory that the Albanian government customarily persecutes Vlachs generally, since that claim would require proof of a "systematic, pervasive, or organized effort to kill, imprison, or severely injure members of the protected group." *Ingmantoro v. Mukasey*, 550 F.3d 646, 651 (7th Cir. 2008); *see Mitreva v. Gonzales*, 417 F.3d 761, 765 (7th Cir. 2005). The evidence simply does not support — let alone compel — finding the existence of such a widespread and repressive program against Vlachs. As the Board noted, relying on documentary evidence including reports from the State Department, Vlachs are officially recognized by the Albanian government as an ethnolinguistic minority, "face no restrictions based on legal, institutional or governmental policy," and are "well-integrated" into Albanian society.

Accordingly, the petition for review is **DENIED.**