NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 7, 2019
Decided August 28, 2019

*Before*

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 19-1026

| | |
|---|---|
| MARIA A. POMPOSO LOPEZ, *et al.*, <br>     *Petitioners*, | Petition for Review of an Order of the <br> Board of Immigration Appeals. |
| *v.* | Nos. A200-768-027, A208-296-669, <br> A208-296-670 & A208-296-671 |
| WILIAM P. BARR, <br> Attorney General of the United States <br>     *Respondent*. | |

**O R D E R**

Maria Pomposo Lopez, a Mexican citizen, petitions, along with her three minor children, for review of the Board of Immigration Appeal's denial of her applications for asylum and withholding of removal under the Immigration and Nationality Act (based on her membership in a social group of people subjected to familial abuse) and for withholding of removal under the Convention Against Torture. The Board concluded that Pomposo Lopez did not establish harm that rose to the level of past persecution, a well-founded fear of future persecution based on a protected ground, or a likelihood that she would be tortured if removed to Mexico. We agree and deny the petition for review.

**I.**

Pomposo Lopez unlawfully entered the United States in 2010 with her three minor children, Eyvi, Aryela, and Andrea, who are also petitioners in this case. They settled in Columbus, Indiana with the children's father.

Pomposo Lopez and her partner testified to the following. When Aryela was ten years old, she confided in a school psychologist that she was being harassed and touched inappropriately by her 24-year-old cousin who lived with the family. The school contacted Aryela's father, who took her to the police station to file a sexual misconduct report in May 2014. When the police questioned Aryela alone, she said that the sexual abuse did not occur, so they closed the case. Aryela's father kicked out his nephew, who later moved to Utah.

Months later, Pomposo Lopez began receiving threatening text messages purportedly sent on behalf of the estranged nephew. The messager identified herself as the nephew's girlfriend and said that she knew where the family lived, that she was going to send someone to beat them up, and that Pomposo Lopez should be careful with her children. The girlfriend also taunted Pomposo Lopez, telling her that the nephew would boast of his abuse of Aryela. Pomposo Lopez twice reported the messages to the Columbus police, but they told her that she needed to receive more messages before they opened an investigation.

In December 2014, Pomposo Lopez and her children returned to Mexico where the harm grew more serious. In February 2015, Pomposo Lopez was held at gunpoint by two unknown men with pistols, while a third man tried to abduct Aryela on the street where they lived. Aryela escaped, but the men restrained Pomposo Lopez and warned her that her partner should stop talking to the police. (In Pomposo Lopez's absence, her partner—then in the United States—had reported to Columbus police that he had been receiving text messages, purportedly from the nephew and his girlfriend, that insulted Pomposo Lopez and Aryela.) Pomposo Lopez reported the incident at gunpoint to a nearby police patrol, who told her that incidents like this happen often and that she "needed to give them a little bit of money in order for them to help [her] find out what happened." She did not pay and received no help.

The family also received phone threats in Mexico. Pomposo Lopez's mother, with whom the family was staying, received calls from unknown callers asking to speak with Pomposo Lopez. On the one occasion that Pomposo Lopez answered the house

phone in May 2015, an unfamiliar female voice told her to be careful "because children can get lost and be found later without their organs." Pomposo Lopez reported this call to the police, who again refused to help her if she did not pay.

The next month, Pomposo Lopez and her children fled Mexico to escape the threats. Since they left, Pomposo Lopez and her partner have not received any threatening phone calls or text messages. But Pomposo Lopez's father in Mexico continued to receive calls from an unknown caller, asking to speak with Pomposo Lopez.

Pomposo Lopez and her children sought to reenter the United States in Laredo, Texas without visas and were stopped at the border. They were placed in removal proceedings and found removable. They applied for asylum and withholding of removal based on what they later identified as a social group comprising (1) individuals or family members of individuals unable to leave a familial, or similar, relationship/situation, and (2) individuals or family members of individuals who have reported crime/familial abuse. They also sought CAT protection.

After a series of continued hearings, the immigration judge denied all their applications. The IJ found Pomposo Lopez credible but concluded that the past harm did not rise to the level of persecution. The IJ did not discuss the proposed social groups but determined that any persecution was not based on a protected ground because the threats were based on a personal family dispute. The IJ further concluded that Pomposo Lopez had not established a well-founded fear of persecution that was objectively reasonable, in part, because no evidence reflected that Pomposo Lopez, her partner, or her relatives in Mexico had received threats in several years, and the police had closed the sexual abuse case against the nephew. Because Pomposo Lopez could not meet the standard for asylum, the IJ also determined that she could not meet the higher standard for withholding of removal. The IJ denied CAT protection, finding that there was no evidence that the Mexican government acquiesced or even knew of any harm and that the incidents that she described do not constitute torture.

Pomposo Lopez appealed to the Board, which upheld the IJ's decision. The Board agreed with the IJ that the harm did not rise to the level of past persecution. The Board also determined that the harm was based on a personal family dispute and that even if the particular social groups were cognizable, the IJ correctly concluded that the family would not be targeted in the future based on any protected group. Finally, the Board agreed with the IJ that the family was ineligible for CAT protection because they

had not shown a likelihood of being tortured in Mexico with the acquiescence of the government.

## II.

On appeal, Pomposo Lopez first contends that the Board erred by concluding that she did not demonstrate past persecution to support her claims of asylum and humanitarian asylum under 8 C.F.R. § 1208.13(b)(1)(iii). She argues that considered together, the repeated phone threats on behalf of the nephew, the attempted kidnapping of Aryela, and her own holdup at gunpoint all rise to the level of persecution. She emphasizes that the incident at gunpoint and the phone message—warning her that her children may get lost and turn up without organs—are "credible threat[s] to inflict grave physical harm," *Stanojkova v. Holder*, 645 F.3d 943, 948 (7th Cir. 2011), of an "immediate or menacing nature." *Bejko v. Gonzales*, 468 F.3d 482, 486 (7th Cir. 2006).

We review the Board's decision under the deferential "substantial evidence" standard and will reverse only if the evidence compels a contrary finding. *N.Y.C.C. v. Barr*, 930 F.3d 884, 888 (7th Cir. 2019). The evidence to which Pomposo Lopez points does not compel a finding of past persecution. Persecution involves "the use of *significant* physical force against a person's body" "or nonphysical harm of equal gravity." *Stanojkova*, 645 F.3d at 948. A single, unsuccessful attempt to abduct Aryela at gunpoint and a series of threatening phone messages, without any physical harm or further attempts to carry out the threats, do not describe grave harm to compel a finding of past persecution. *See I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992); *Mema v. Gonzales*, 474 F.3d 412, 418 (7th Cir. 2007) (abduction at gunpoint followed by detention and physical abuse did not compel conclusion of past persecution); *Hasanaj v. Ashcroft*, 385 F.3d 780, 782 (7th Cir. 2004) (single incident at gunpoint with no physical harm did not compel finding of past persecution).

Moreover, "[t]hreats can constitute past persecution only in the most extreme circumstances, such as where they are of a most immediate or menacing nature or if the perpetrators attempt to follow through on the threat" but "[i]n the majority of cases" threats do not compel a finding of past persecution. *Bejko*, 468 F.3d at 486. A finding of past persecution can be compelled, however, if threats are accompanied by other incidents of severe violence. *See Cecaj v. Gonzales*, 440 F.3d 897, 899–900 (7th Cir. 2006) (past persecution found after two detentions with beatings, gunshot intended to intimidate, threatening phone calls, child kidnapping, and another threat); *Kantoni*

*v. Gonzales*, 461 F.3d 894, 898 (7th Cir. 2006) (past persecution found in situation of "rape, the destruction of one's business, threats, detention, more threats, and threatened seizure of one's children"). Here, the gunpoint incident was fortunately an isolated occurrence, and there is no evidence that the perpetrators attempted to follow through on the threat. Although the incident occurred on the street near the family's home, the family remained there for four more months without further encounters. Because Pomposo Lopez has not established past persecution, her claim for humanitarian asylum also fails. *See Georgieva v. Holder*, 751 F.3d 514, 523 (7th Cir. 2014).

Pomposo Lopez next attacks several grounds supporting the IJ's conclusion that she lacks a well-founded fear of future persecution. First, she says that the IJ unreasonably concluded that she had not shown a well-founded fear because the family had not received any threats since fleeing to the United States. This conclusion is unreasonable, she contends, because it requires asylum applicants to demonstrate that threats are ongoing even after they have successfully fled danger—the very basis of their asylum claim. But the IJ's reliance on the absence of any threats after Pomposo Lopez fled Mexico is reasonable given the nature of the threats in this case. Pomposo Lopez testified that the perpetrators of the threats and harm—the nephew and his girlfriend—reside in the United States and have family connections in both countries, and, thus, could reasonably access the family in either country. Indeed, the threatening phone messages began when Pomposo Lopez was in the United States. Yet, despite this access, no one in Pomposo Lopez's family received any threats, in either country, after she fled Mexico.

Pomposo Lopez counters that the IJ overlooked evidence from her declaration that her father received phone calls for her in Mexico after she fled. But the relevant part of the declaration reads: "My father is still receiving phone calls for me in Mexico. The numbers are marked private. We don't know who is calling. My father tells them I am not there." This evidence does not establish that her father received any *threats*, and thus does not undermine the IJ's conclusion that no threats occurred since Pomposo Lopez left Mexico.

Next, Pomposo Lopez challenges the IJ's determination that she lacks a fear of persecution on grounds that Aryela withdrew her statements about the alleged sexual abuse and the police closed the case. It was only after the police closed the case, she contends, that the most significant harm occurred—the attempted kidnapping at

gunpoint. The case's closure, then, she insists, is not indicative of whether she would reasonably experience further harm for filing the police report.

But substantial evidence supports the IJ's conclusion that Pomposo Lopez had no reason to fear future persecution. The IJ reasonably concluded that—because Pomposo Lopez and her partner had not heard from the nephew or his girlfriend in several years and there was no threat of criminal charges for the alleged abuse—the family had no reason to fear further threats from the nephew. The fact that Pomposo Lopez experienced serious threats months after Aryela filed and withdrew her sexual abuse complaint does not weaken the IJ's determination that the fear of further threats several years later was objectively unreasonable given the absence of any threats in the intervening two years.

Because we have concluded that the record does not compel a finding that Pomposo Lopez had a well-founded fear of future persecution, we need not address her arguments that any persecution was based on her membership in a particular social group.

Pomposo Lopez also challenges the denials of her claims of statutory withholding of removal and withholding of removal under CAT. The standard for withholding of removal is more stringent than that for asylum. *Boci v. Gonzales*, 473 F.3d 762, 767 (7th Cir. 2007). To qualify for withholding of removal, an alien must demonstrate a clear probability that he or she will face persecution if removed. *Id*. Because Pomposo Lopez has not met the more lenient burden of proof for asylum, she does not qualify for withholding of removal.

Finally, Pomposo Lopez seeks protection under CAT. To receive this protection, an applicant must show that "it is more likely than not that one would be tortured if removed to the proposed country of removal." *Sarhan v. Holder*, 658 F.3d 649, 653 (7th Cir. 2011) (quoting *Toure v. Holder*, 624 F.3d 422, 429 (7th Cir. 2010)). "Torture" is defined as "severe pain or suffering" or an "extreme form of cruel and inhuman treatment" that is intentionally inflicted with the consent or acquiescence of a public official. 8 C.F.R. § 208.18(a)(1)–(2). Pomposo Lopez has provided no evidence of torture as defined by federal regulations, thus the record does not compel granting her relief under CAT.

Because substantial evidence supports the Board's conclusions, we deny the petition for review.